## SANKS ᴇᴛ ᴀʟ. *v.* GEORGIA ᴇᴛ ᴀʟ.

No. 28. Argued December 8, 1969—Reargued November 17–18, 1970—Decided February 23, 1971

Hᴀʀʟᴀɴ, J., delivered the opinion of the Court, in which Bᴜʀɢᴇʀ, C. J., and Dᴏᴜɢʟᴀs, Bʀᴇɴɴᴀɴ, Sᴛᴇᴡᴀʀᴛ, Wʜɪᴛᴇ, Mᴀʀsʜᴀʟʟ, and Bʟᴀᴄᴋᴍᴜɴ, JJ., joined. Bʟᴀᴄᴋ, J., filed a statement concurring in the judgment, *post,* p. 153.

*Michael D. Padnos* reargued the cause for appellants. With him on the brief were *Nancy S. Cheves* and *John William Brent.*

*Alfred L. Evans, Jr.,* Assistant Attorney General of Georgia, reargued the cause for appellees. With him on the brief were *Arthur K. Bolton,* Attorney General, *Harold N. Hill, Jr.,* Executive Assistant Attorney General, and *A. Joseph Nardone, Jr.,* Assistant Attorney General.

*Frank B. Zeigler* filed a brief for the Legal Aid Office of Savannah, Inc., as *amicus curiae* urging reversal.

MR. JUSTICE HARLAN delivered the opinion of the Court.

We noted probable jurisdiction in this case, 395 U. S. 974 (1969), because the judgment of the Georgia Supreme Court appeared to raise substantial questions under the Fourteenth Amendment that were deserving of our plenary consideration, and because whatever conclusion this Court might reach with respect to them would definitively settle this aspect of the litigation. In brief, the Georgia Supreme Court upheld, over due process and equal protection challenges, a state statutory scheme that compelled appellants, both indigent persons who sought to contest landlord petitions for summary eviction from their homes, to post, as a condition precedent to offering any defense to summary eviction, a surety bond in double the potential amount of rent due at the end of trial. The statutes, this aspect of which was also upheld by the Georgia Supreme Court, provided further that the landlords would become entitled to such double rent should the tenant-appellants lose their cases.

The case was first heard by us at the 1969 Term, and was thereafter set for reargument at the present Term. 399 U. S. 922 (1970). At reargument it became apparent that events occurring subsequent to our notation of probable jurisdiction had so drastically undermined the premises on which we originally set this case for plenary consideration as to lead us to conclude that, with due regard for the proper functioning of this Court, we should not now adjudicate it.

I

The Georgia statutory scheme under which this case was initiated, Ga. Code Ann. §§ 61–301 to 61–305 (1966), and § 61–306 (Supp. 1969), operated in the following manner. A landlord seeking summary eviction could file an affidavit in a local court, alleging that the tenant,

for one or more statutorily enumerated reasons, was unlawfully holding possession of the premises and had refused the landlord's demand to relinquish possession. (§ 61–301.) When such an affidavit had been filed the local judicial officer was required to issue a "warrant or process" to the sheriff directing him to "deliver to the owner" the premises described in the affidavit. (§ 61–302.) The sheriff was to give the tenant four days' notice before executing the dispossessory warrant. (§ 61–306 (Supp. 1969).)

The tenant could prevent immediate eviction only by filing a counter-affidavit, alleging one of several specified defenses and accompanied by a surety bond "for the payment of such sum, with costs, as may be recovered against him on the trial of the case." (§ 61–303.) Only if the tenant followed these procedures was he then entitled to a trial on the issues raised by the affidavits. (§ 61–304.) Against this background, § 61–305 provided:

> "If the issue specified in the preceding section shall be determined against the tenant, judgment shall go against him for double the rent reserved or stipulated to be paid, or if he shall be a tenant at will or sufferance, for double what the rent of the premises is shown to be worth . . . ."

In the case before us, appellants Sanks and Momman were served with dispossessory warrants on May 21, 1968, and July 17, 1968, respectively (App. 3, 18), and then applied for (App. 5, 20), and eventually obtained (App. 24–39) from the Civil Court of Fulton County a "rule nisi" permitting appellants to remain in possession of their respective premises pending resolution of the factual issues raised by their applications, so long as they timely paid their rent into court during the pendency of the litigation. Both the bond-posting

requirement (§ 61–303) and the double-rent damages measure (§ 61–305) were declared unconstitutional and, hence, inapplicable to these eviction proceedings. (App. 27–39.) On an interlocutory appeal, the trial court's constitutional declarations were set aside by the Supreme Court of Georgia, 225 Ga. 88, 166 S. E. 2d 19 (1969), and the judgment of the lower court was reversed.

## II

Since we noted probable jurisdiction the posture of this case has shifted dramatically. Both Mrs. Momman and Mrs. Sanks have removed from the premises originally sought to be recovered by their landlords. In addition, the Georgia General Assembly has repealed virtually the entire statutory scheme that has governed this litigation from its inception and replaced it with a new one, effective July 1, 1970, that contains neither the bond-posting nor double-rent requirement. 1 Ga. Laws 1970, pp. 968–972, Ga. Code Ann. §§ 61–302 to 61–305 (Supp. 1970). Under the new law, dispossessory actions will still be commenced by the landlord's execution of an affidavit. Now, however, this merely compels the local judicial officer to cause the tenant to be summoned to a hearing (§ 61–302), and the tenant can retain possession and force a trial of any defenses he may wish to raise simply by answering the affidavit, orally or in writing, at the hearing. (§ 61–303.) Expedited trials are encouraged. If the litigation has not been concluded within a month of the execution of the landlord's affidavit, the tenant may retain possession by paying into court all rent as it becomes due, in addition to any rent that was due but not paid prior to issuance of the summons. (§§ 61–303, 61–304.) If the landlord ultimately prevails, his monetary damages, if any, are to be based on the actual, not double, rent found due. (§ 61–305.) Similarly, the tenant may, in effect, stay execu-

tion of the dispossessory warrant pending appeal of an adverse determination simply by paying rent, as it accrues, into the court. (§ 61-306.)

## III

The crux of this controversy from its inception has been appellants' insistence that they, not their alleged landlords, had the right to lawful possession of the premises in dispute and their demands that they be permitted to remain in possession pending the outcome of the litigation.[1] With appellants' voluntary removal from the premises this aspect of the case is clearly moot. We have been apprised of no basis in the statutes or case law for assuming that were this Court now to hold Mrs. Sanks and Mrs. Momman were constitutionally entitled to proceed in the trial court without first posting a double-rent bond, they could then seek a decree under the statutes here at issue returning them to possession of the premises. The repealed statute spoke only of enabling a tenant already in possession to contest forcible eviction upon posting a bond. Indeed, neither appellants nor appellees—all of whom resist the suggestion that the case as a whole is moot—contend that this aspect of it is not moot. There is thus no reason to believe that, on remand, either appellant, if successful in this Court, could litigate, in the context of any proceeding that might conceivably be governed by any of the provisions of these repealed Georgia statutes, a claim to be put in possession of the premises she originally occupied.

In support of the continued justiciability of the case, appellants rely upon a subsidiary aspect of this controversy which they claim remains alive. Were this

---

[1] Mrs. Sanks intended to contest the dispossessory warrant on the ground that she is not, in fact, the tenant of the person seeking to evict her. App. 5.

Court to affirm the Georgia Supreme Court on the merits, the case would presumably be remanded to the trial court in accordance with the Georgia Supreme Court's mandate. There, argue appellants, those who initially procured the dispossessory warrants might then move for entry of a judgment for double damages as provided in former § 61–305. Appellants fear that such a judgment might automatically be entered because their removal from the premises might be construed as effectively conceding their lack of substantive defenses or that, even if they are still technically entitled to raise defenses, appellants' ability to do so will be conditioned on first posting the bond. Such a result is possible only if a number of factors coalesce. First, the original moving parties, the alleged lessors, would have to decide to seek such damages from these relatively impecunious appellants. Second, the Georgia courts would have to rule that such request for damages should be adjudicated under the repealed statutes. Third, it would also be necessary for the state courts to hold that those statutes contemplated awarding double rent in the circumstances here and (see *infra*) on a basis that renders material the bond-posting provision.

Beyond all this, the original posture of this case has been further upset by the apparent fact that prior to moving out, and in compliance with the order of the trial court, appellants paid their rent money into the court's registry as it became due, money that still remains on deposit there. Tr. of Oral Rearg., Nov. 18, 1970, pp. 10–11, 26.

With the case in this Court thus so reoriented, it is impossible for us to predict whether and to what extent our adjudication of the issues originally presented would now be material to any further litigation that might ensue on remand. Whether the original initiating parties will seek double damages is a matter wholly beyond

the control of this, or any other, court. Whether the existence of funds in the registry of the trial court will necessitate an adversary proceeding to redistribute them and, if so, whether that proceeding would be governed by the repealed statutes which, on their face, do not even remotely speak to this problem, are matters of pure conjecture. Because the former statutes provided for double damages only where "the issue . . . [is] determined against the tenant" (former § 61–305) and provided for joinder of issue only where a double-rent bond had first been posted (former §§ 61–303, 61–304), we are quite unable to say whether the Georgia courts would nevertheless hold this language sufficiently elastic to permit a claim for double damages where eviction was arrested by court order rather than a bond, yet insufficiently flexible to permit simultaneous waiver of the bond-posting requirement before adjudication of such a claim. Nor can we predict whether and to what extent repeal of the former statutory scheme would, on remand, be held to alter any of the conclusions respecting it which the Georgia courts might otherwise adopt in this context.[2] All these issues, so far as it appears, would be matters of first impression for the Georgia judiciary.

## IV

Given this imponderable legal tangle, involving, as it does, purely matters of state law, we perceive no other responsible course for this Court than to decline, at this stage, to adjudicate the issues originally presented. We

---

[2] Georgia has a statutory policy disapproving the retroactive application of new statutes. Ga. Code Ann. § 102–104 (1968). However, the statute expressly distinguishes "[l]aws looking only to the remedy or mode of trial." Conceivably, this case might be held to fall within that exception. Moreover, we cannot foretell whether a subsequent motion for double damages would be treated as, in effect, a new lawsuit filed well after passage of the new Act.

do not rest this conclusion on a determination that the case is moot. Conceivably, appellants may on remand be subjected to the double-rent or bond-posting requirements of the former statutes. But it has always been a matter of fundamental principle with this Court, a principle dictated by our very institutional nature and constitutional obligations, that we exercise our powers of judicial review only as a matter of necessity. As said in *United States* v. *Petrillo,* 332 U. S. 1, 5 (1947), "We have consistently refrained from passing on the constitutionality of a statute until a case involving it has reached a stage where the decision of a precise constitutional issue is a necessity." Manifestly, it cannot plausibly be maintained that this is such a case. Indeed, the only thing that is now apparent about this lawsuit is that the clear-cut constitutional issues it formerly presented cannot with any certainty be said to be relevant to the issues remaining in it, if, in fact, any issues do remain.

Moreover, even were the constitutional issues certain to arise below we cannot foretell the context in which they will appear. Possibly the double-rent provision will be successfully invoked, but not the bond-posting requirement. Similarly, if the latter is held applicable, we would at this stage be required to adjudicate, in advance of that fact, its validity as a precondition not to resisting summary eviction, which is its normal and clearly intended use, but to contesting a claim for damages only. The operative competing constitutional considerations, particularly the nature and scope of the State's interest in imposing such a barrier to litigation, may well be significantly different depending on the principal purposes for which the bond is required. Yet, given the debilitated state of this lawsuit, we could address only the subsidiary problem—and this in a legal context where we would not know whether that problem will ever arise.

The principle of prudent restraint we invoke today is

nothing new, although, happily, it has not frequently proved necessary to dispose of appeals on this basis. *United States* v. *Fruehauf*, 365 U. S. 146 (1961), provides an apt analogy. There the United States had appealed the dismissal of an indictment brought under § 302 (a) of the Taft-Hartley Act, 61 Stat. 157, which made it unlawful "for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees," where the lower court had construed a Government pre-trial memorandum as a concession that the transaction forming the basis of the indictment was a loan and held that the statute did not penalize management for loaning money to union officials. This Court noted probable jurisdiction to consider the validity of this construction of the statute, but after oral argument the Solicitor General represented to the Court that he felt the Government was free, on remand, to prove the transaction came within the statute because its particular facts revealed this was not a bona fide loan. This occurrence left the precise issue to be decided so opaque and the extent to which a decision would resolve the controversy so uncertain that the Court, in effect, was being asked to render an "advance expression of legal judgment upon issues which remain unfocused," 365 U. S., at 157. Accordingly, the Court remanded the case without further adjudication.

In the case now before us subsequent events have produced similar consequences. The focus of this lawsuit has been completely blurred, if not altogether obliterated, and our judgment on the important issues involved is potentially immaterial. Indeed, the instant case is obviously more compelling than *Fruehauf,* since this one presents an issue of constitutional, not statutory, interpretation.

Similarly, in *Rescue Army* v. *Municipal Court of Los Angeles,* 331 U. S. 549 (1947), the Court declined to adjudicate an appeal presenting important constitutional issues because those issues were, on close inspection, so intertwined with complex problems of construing the Los Angeles Municipal Code that it was not possible to tell with precision at that stage in what context and to what extent the appellants' freedom was being restrained. So, here, we do not know, assuming the bond-posting or double-damages provisions ultimately are successfully invoked, in what context this will occur, or what the precise rationale for applying them will be.

In short, resolution by this Court at this time, of the issues originally raised by appellants would not be appropriate. We leave ourselves completely free, of course, to review these issues should appellants' fears that they will be adversely affected by the repealed statutes subsequently be confirmed by proceedings in the Georgia courts.

Accordingly, the appeal will be dismissed and the case remanded to the Supreme Court of Georgia.

*It is so ordered.*

MR. JUSTICE BLACK concurs in the judgment of the Court dismissing this appeal but does so specifically on the ground that the case is now moot.