**Darlene MONSON et al., Plaintiffs,**

v.

**HOSPITALIZATION COMMISSION FOR POLK COUNTY, IOWA, et al., Defendants.**

Civ. No. 8-2188-C-2.

United States District Court, S. D. Iowa, C. D.

Feb. 7, 1972.

Robert C. Oberbillig, Des Moines, Iowa, and Brian Michael Olmstead, Boston, Mass., for plaintiffs.

Philip F. Miller, Asst. Polk County Atty., Lorna Williams, Asst. Atty. Gen., D. J. Fairgrave, and W. C. Hoffmann, Des Moines, Iowa, for defendants.

Before LAY and STEPHENSON, Circuit Judges, and HANSON, Chief District Judge.

### MEMORANDUM ORDER

STEPHENSON, Circuit Judge.

This suit, instituted May 7, 1968, is based on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4). It seeks to challenge the validity of certain provisions of the Iowa statutory scheme governing the hospitalization of mentally ill persons.

The plaintiff, Darlene Monson, sues for herself and for others similarly positioned. The complaint seeks (a) to have the challenged statutes declared void and violative of the First, Fourth, and Fourteenth Amendments of the Constitution of the United States; (b) to enjoin the several defendants from enforcing and administering the challenged statutes; and (c) damages in the amount of $150,-000. The defendants are the Hospitalization Commission of Polk County, Iowa, the individual members of that Commission, and certain other private persons allegedly possessing some official connection with the commitment of the mentally ill in Polk County. The State of Iowa has been granted leave to appear as an intervening defendant.[1] All defendants by their answer ask that the suit be dismissed or, in the alternative, that the court defer action until the Supreme Court of Iowa has an opportunity to interpret and construe the questioned statutes.

Inasmuch as the suit is, in the main, one to enjoin the enforcement and execution, on federal constitutional grounds, of Iowa statutes by local officials performing a State function that represents a general state policy,[2] this three-judge

---

1. The State of Iowa satisfied the conditions for intervention of right prescribed by Fed.Rules Civ.Proc. rule 24(a) (2), 28 U.S.C.A.

2. Sailors v. Board of Education of County of Kent, 387 U.S. 105, 107, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1957) and Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 94–

95, 55 S.Ct. 678, 79 L.Ed. 1322 (1935). Cf. Board of Regents, etc. v. New Left Education Project, 404 U.S. 541, n. 2, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972) and Moody v. Flowers, 387 U.S. 97, 101–102, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1957). Compare McGuire v. State of Iowa, 320 F.Supp. 243, 244 n. 2 (S.D. Iowa 1970). See generally, Note, 54 Cornell Law

district court was designated. 28 U.S.C. §§ 2281, 2284(1).

## I

The hospitalization statutes with which we here are concerned comprise Chapters 228 and 229 of the Iowa Code.[3] Chapter 228 provides for the creation, in each Iowa county, of a county commission of hospitalization. I.C.A. § 228.1. The commission is vested with complete and exclusive jurisdiction over all applications for admission and commitment to state mental facilities of mentally ill[4] persons found within its county.[5] I.C.A. § 228.8. Each commission is composed of three members and consists of the clerk of the District Court or, in his absence, his deputy, a reputable physician engaged in actual practice, and one reputable and actively practicing attorney. I.C.A. § 228.2. The physician and attorney are appointed to two-year terms by the District Court. I.C.A. § 228.3. In the "temporary absence" or inability of two members to act, the member present may call to his aid, on a temporary basis, persons "possessing the qualifications of the absent members." I.C.A. § 228.5. The duties of the clerk include, *inter alia,* the task of issuing all processes required to be given by the commission. I.C.A. § 228.6. The commission has broad subpoena powers. I.C.A. § 229.3.

Chapter 229 delineates the procedures by which commitment to a state mental facility is accomplished. Specifically, § 229.1 authorizes two distinct kinds of hospitalization:

(1) Voluntary admission. Under this procedure, a person may be admitted to an institution for a period not to exceed thirty days for temporary observation, examination, treatment and diagnosis. The only conditions attached to this type of commitment are that the admittee give his written consent and that the facility to which admission is sought be neither overcrowded nor understaffed. When commitment is accomplished in this way, the superintendent of the facility must make certified findings as to mental illness. In the event further treatment and commitment is indicated, the superintendent must so inform the appropriate county commission.

(2) Involuntary commitment. The commission's power to decree forced hospitalization is engaged by the filing of a sworn information on behalf of one whom the informant believes to be mentally ill and a fit subject for custody and treatment. The statute imposes no limitations with regard to who may file this information. The informant must allege that the prospective patient is within the county and specify his or her address if known. If, from the information, the commission concludes that there is reasonable cause to believe that the charge of mental illness is true, it then may order the person against whom the charge is lodged to be brought before it and issue a warrant empowering a local peace officer to take such person into custody pending an adjudicatory hearing. I.C.A. § 229.2. Thus, with regard to involuntary commitment, we are confronted with a statutory scheme under which a warrant may issue *ex parte* upon the filing of a sworn information, the execution of which requires no notice, and the effect of which is to authorize immediate detention at a county custodial facility. And, while it is clear that the warrant and information imply conduct out of compliance with a governing standard, the sole standard asserted in the statute is a commission finding, also *ex parte,* that the person to

---

Quarterly 928, 934–939 (1969) and Note, 77 Harvard Law Review 299 (1964).

3. Note, 55 Iowa Law Review 895 (1970) and Note, 35 Iowa Law Review 270 (1950).

4. The term "mental illness" is defined by statute to include "every type of mental

disease or mental disorder." I.C.A. § 229.40.

5. The commission does not possess jurisdiction over individuals held under grand jury indictment or trial information filed by a county attorney. I.C.A. § 228.8.

be confined is mentally ill and a fit subject for custody and treatment.

## II

This case arose in the following way.[6] Mrs. Lucille Phillpot, the plaintiff's mother, on February 2, 1968, filed, pursuant to I.C.A. § 229.1, a formal information with a deputy clerk of the Polk County, Iowa District Court in which she alleged that the plaintiff, then 34 years of age, was afflicted with mental illness and was thus a fit subject for custody and treatment.[7] Thereupon, without referring the matter to the County Commission and giving that body the opportunity to determine if the information was grounded on reasonable cause, the deputy clerk issued an "order to take into custody" empowering the sheriff or any peace officer of Polk County to bring the plaintiff before the County Commission "to be dealt with according to law." This "pick-up order" recited that the plaintiff should be delivered to Broadlawns Polk County Hospital.

On the day the information was filed and the warrant issued, two caseworkers from the Polk County Department of Welfare visited the plaintiff's residence and suggested that she seek voluntary admission to the Broadlawns psychiatric ward.[8] Upon her refusal so to do, the caseworkers departed and went directly to the office of the plaintiff's personal physician. The doctor was informed of the filing of the information and issuance of the warrant. He immediately telephoned the plaintiff and encouraged her to seek voluntary admission and thereby avoid the "stigma" of judicially ordered hospitalization. One of the caseworkers returned to the plaintiff's residence and allegedly advised her that she could "sign herself in and out" of the hospital. The plaintiff then permitted the caseworker to drive her to the hospital. Upon her arrival there, she executed the following application:

"I, Darlene Pohlad, * * * hereby voluntarily apply for admission to Broadlawns Psychiatric Ward for evaluation and/or treatment of my condition and hereby grant Broadlawns Hospital and the Psychiatric Staff the right to evaluate and/or treat my condition.

"Dated this February day of 2 (sic), 1968."

The plaintiff was admitted to the hospital and remained there for fourteen days. She was discharged February 16, 1968, with a final diagnosis of "Personality pattern disturbance, paranoid personality." Some two months later the plaintiff instituted this class action in forma pauperis.

## III

The plaintiff's constitutional attack is mounted against the statutory scheme under which involuntary commitment is accomplished. She urges that I.C.A. §§ 229.1 and 229.2 are invalid on their face or as applied because they clothe State officials and private persons with "uncontrolled and unfettered discretion" to deprive any person of the "liberty" secured to him by the Fourteenth Amendment solely on the basis of the belief that an individual is mentally ill and a

---

6. The pertinent facts are established by the parties by admissions in the pleadings, by stipulation, and by exhibits and testimony received at an antecedent evidentiary hearing.

7. Although the plaintiff, in her filings in this court, strikes a posture implying surprise at the filing of the present information, the record, viewed whole, is revealing as to a sad and unhappy psychiatric background; as to a 1964 suicide attempt; as to psychiatric treatment in July 1967 occasioned by an overdose of tranquilizers; and as to repeated demands, in late 1967, on the Polk County Department of Welfare for subsidized hospital care at the Des Moines General Hospital. There are intimations in the record that the present information was founded upon a fear that the plaintiff was over-medicating herself.

8. The record indicates that this visit was prompted by the plaintiff's constant and repeated demands for subsidized care at the Des Moines General Hospital.

fit subject for custody and treatment. She points to the procedural machinery established by § 229.2 by which a warrant may be issued. This provision, she asserts, authorizes the deprivation of a citizen's liberty without affording him notice and an opportunity to be heard. It also is argued, on First and Fourteenth Amendment grounds, that the term "mental illness", as defined by § 229.40, is so incomplete and indefinite as to be susceptible of an arbitrary exercise of governmental power violating established constitutional concepts. In more detail it is urged that the statutory definition is *no definition at all and sets out no reasonable standard* and that it leaves to prejudice, whim and caprice the power to incarcerate those to whom it is applied. Finally, the plaintiff takes issue with §§ 229.1 and 229.2 on the ground that they authorize the unreasonable seizure of a person, contrary to the express guarantees of the Fourth and Fourteenth Amendments.

Apparently on the chance that this court should find no constitutional infirmity in the questioned statutes, the contention is made that even though the statutory procedures and standard may be constitutionally valid, the methods used by the appropriate State officials in applying them are not. Specifically, the plaintiff maintains that the statutory standard of reasonable cause automatically is found to exist upon the filing of the information in each and every case. Ancillary to this attack, the argument is made that, as a matter of State-wide practice, informations are screened for reasonable cause by the deputy clerk with whom they are filed, rather than by the Commission *en banc*. The point of this argument seems to be

that the plaintiff and those whom she purports to represent have sustained irreparable damage by reason of the fact that the appropriate State officials consistently and inexplicably refuse to heed the clear, plain, and positive language of the controlling statutes.

Against this extended background of relevant statutory materials, the facts out of which the case arises, and the contentions made in support of the claims posited by the complaint, we turn to the questions sought to be presented.

## IV

As noted, the case is one seeking constitutional adjudication and damages. Because of the constitutional claim and in view of the posture in which the case reaches us, we necessarily and initially are confronted with the "case or controversy" requirement of article III, section 2 of the United States Constitution. We note: (1) the plaintiff seeks to draw *into focus the constitutionality of State legislation*; (2) the injury which she allegedly sustained by reason of the operation of that legislation occurred and was complete prior to the time she instituted this action; and (3) the plaintiff has neither alleged facts nor adduced proof on the basis of which we reasonably could conclude that the same injury is likely to recur. From this aggregate of circumstances two important issues emerge: (1) is this plaintiff the "proper party to request an adjudication of [the] particular issues[s]" sought to be raised,[9] and (2) whether the fact that this case presents questions dealing with the legal consequences of past conduct moots the constitutional claim as to this plaintiff and thus aborts the need for a declaration of constitutionality.[10] We

9. Flast v. Cohen, 392 U.S. 83, 92, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). See generally, Golden v. Zwickler, 394 U.S. 103, 108–110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); United States v. Raines, 362 U.S. 17, 20–22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943); and Fairchild v. Hughes, 258

U.S. 126, 129–130, 42 S.Ct. 274, 66 L.Ed. 499 (1922).

10. See, *e. g.*, United States v. W. T. Grant Co., 345 U.S. 629, 632–633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Atherton Mills v. Johnston, 259 U.S. 13, 15–16, 42 S.Ct. 422, 66 L.Ed. 814 (1922) and Richardson v. McChesney, 218 U.S. 487, 492, 31

need not evaluate these issues, for we have decided to rest our disposition of this case on another quite independent ground.

## V

 This complaint does, to be sure, contain general allegations that the statutory scheme under which suit was filed is unconstitutional. Here, so the complaint alleges, the plaintiff suffered injury by incarceration pursuant to Commission warrant because of a denial of Due Process in the steps leading to that incarceration. However, by stipulation and from remarks made at oral argument, the parties have given this case a significantly different hue. This is so because the State and County Commission, while acknowledging that a clerk is not statutorily authorized to issue warrants commanding confinement unless and until the Commission has first passed upon the merits of the information, concede that the warrant issued in this case without proper screening by the Commission *en banc*.[11] Thus, the gist of the claim is that the applicable procedure was not complied with, with the result that the plaintiff was unlawfully

hospitalized and damaged. So viewed, the only litigable suggestions of a denial of Federal rights are statements in plaintiff's briefs questioning the propriety of her incarceration under those circumstances. Given this as the framework for analysis, a resolution of the constitutional claims is unnecessary.

## VI

It always has been the law that federal courts are "never to anticipate a question of constitutional law in advance of the necessity of deciding it."[12] Here, as, for example, in Sanks v. Georgia, 401 U.S. 144, 91 S.Ct. 593, 27 L.Ed.2d 741 (1971), it cannot plausibly be maintained that this is a case in which constitutional adjudication is a necessity. "Indeed, the only thing that is now apparent about this lawsuit is that the * * * constitutional issues * * * cannot with any certainty be said to be relevant to the issues remaining in it * * *."[13] Because at no point in the course of events described in the complaint were the involuntary commitment procedures required under §§ 229.1 and 229.2 followed in this instance, we do not have, under the applicable prece-

S.Ct. 43, 54 L.Ed. 1121 (1910). See generally, Diffenderfer v. Central Baptist Church, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) and Securities and Exchange Commission v. Medical Committee for Human Rights, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

11. In making this concession, the State argues that since the plaintiff voluntarily "signed herself into the hospital", there really is no proper occasion for this court to concern itself with the validity of the involuntary commitment portions of §§ 229.1 and 229.2. We reject this suggestion because it assumes one of the disputed questions of fact, namely, whether the admission form signed by the plaintiff was in fact knowingly executed. It is the plaintiff's contention that she executed the form on the basis of an understanding, apparently traceable to representations made by hospital personnel, that such a procedure would enable her to leave the hospital when she pleased. In view of the present state of this record,

we need not and do not assess the merits of this claim.

12. Liverpool, New York and Philadelphia Steamship Company v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885). Other cases are collected in the opinion of Mr. Justice Brandeis in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–347, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

13. Id., at 151, 91 S.Ct. at 597. See also, Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); Bush v. State of Texas, 372 U.S. 586, 590, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); Clay v. Sun Insurance Office Ltd., 363 U.S. 207, 211–212, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951); United States v. Petrillo, 332 U.S. 1, 12, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); Rescue Army v. Municipal Court, 331 U.S. 549, 568, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); and Asbury Hospital v. Cass County, 326 U.S. 207, 213–214, 66 S.Ct. 61, 90 L.Ed. 6 (1945).

dents, any occasion to determine whether those procedures are constitutionally defective. Moreover, absent the need for assessing the validity of the involuntary commitment procedure, we are not imperatively required to scrutinize, under constitutional standards, the definition of "mental illness" contained in § 229.40. We are therefore left with no constitutional questions to decide.

## VII

■ There only remains for consideration the claim that damages were here sustained by reason of the alleged administrative misapplication of the statutes. The law is clear that such a claim is not, without more, one which must be heard in the first instance by a statutory three-judge court.[14] It is equally clear, however, that *if* a three-judge court is properly convened it may decide "all claims" upon which relief is sought.[15] Putting to one side the *question of whether this court was properly convened,*[16] it is our conclusion that the proper course for us to follow here is to remand the case to the single District Judge to whom the three-judge application initially was addressed.[17] On remand the District Court possesses wide discretion to proceed in whatever manner it deems most effective. We de-

cide only that on this record remand of the case is fully justified.

The case is remanded to the Honorable William C. Hanson, Chief Judge, United States District Court, Southern District of Iowa.

It is so ordered.

---

14. C. Wright, Law of Federal Courts, § 50, at 190 (2nd Ed. 1970).

15. Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80–81, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960) and Sterling v. Constantin, 287 U.S. 378, 393–394, 53 S.Ct. 190, 77 L.Ed. 375 (1932). See also, King v. Smith, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (by implication). But cf. Perez v. Ledesma, 401 U.S. 82, 87, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

16. We perceive no need to determine whether the issue of administrative misapplication is, in essence, a claim attacking, as unconstitutional, the *result* obtained by the use of an otherwise constitutional statute and, as such, one not

within the exclusive jurisdiction of a three-judge court, see Moyer v. Nelson, 324 F.Supp. 1224, 1228–1229 (Three-judge court, S.D. Iowa 1971), and cases there cited, or whether, on the other hand, the issue is one by itself warranting a three-judge court by reason of its connection with a substantial claim that the involuntary commitment procedure is infirm on its face. See Turner v. Fouche, 396 U.S. 346, 353–354 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

17. It now is clear that the District Court, notwithstanding the convening of this court, retained jurisdiction over all claims that are appended to the three-judge claim. Rosado v. Wyman, 397 U.S. 397, 402–407, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).