Dora PERNAS, on behalf of herself and all others similarly situated, Plaintiff,.

v.

PARKVIEW TOWERS MANAGEMENT CORP., a corporation of the State of New Jersey, Defendant.

Civ. A. No. 80–1433.

United States District Court,
D. New Jersey.

Nov. 10, 1980.

Hudson County Legal Services Corporation by Gregory G. Diebold, Jersey City, N. J., for plaintiff.

James P. Dugan by James E. Flynn, Bayonne, N. J., for defendant.

## OPINION

MEANOR, District Judge.

This case comes before the court for the disposition of several motions. Plaintiff moves for a preliminary injunction, the certification of a class pursuant to F.R.Civ.P. 23 and for the summary adjudication of the matter pursuant to F.R.Civ.P. 65(a)(2). Defendant moves for an order granting summary judgment dismissing the complaint on the grounds that there exists no material issue of fact and that the defendant is entitled to judgment as a matter of law.

The plaintiff requests that the court consider her motion as a cross–motion for summary judgment. The defendant has no objection to this request.

As taken from the pleadings and the affidavits, the facts in this case are the following. Plaintiff, Ms. Dora Pernas, was, prior to May 5, 1980, a resident in one of defendant's apartment complexes. More particularly, she occupied an apartment at 5105 Park Avenue, West New York, New Jersey, under a written yearly lease with defendant. She had resided there for a period of four years.

On May 5, 1980, after receiving repeated warnings from management, Ms. Pernas was served with a notice to vacate the premises by defendant's agent, Mr. Charles Canino. The ground for the notice was the alleged disorderly conduct of Ms. Pernas. Defendant asserts that this disorderly conduct continued after Ms. Pernas was served with the notice and, furthermore, that she refused to vacate the apartment even though she was informed that a summary dispossess action would be instituted against her.

The summary dispossess action was commenced by defendant in the Hudson County District Court on June 4, 1980. Defendant sought possession of the apartment in the Parkview Towers complex that was rented to Ms. Pernas. The ground of the summary dispossess action was the alleged disorderly conduct of Ms. Pernas. However, prior to the defendant's filing of the action in the Hudson County District Court, plaintiff's attorneys, Hudson County Legal Services, filed the present action in this court.

In her complaint, Ms. Pernas states that "[t]his is a suit brought under 42 *U.S.C.* § 1983 by a class of tenants challenging, on equal protection grounds, the provisions of *N.J.S.A.* 2A:18–59." She alleges that she "faces eviction from her home because that statute limits her right to appeal any judgment of possession entered against her by the Hudson County District Court." The pertinent allegation with respect to the proposed class is "[p]laintiff brings this action on behalf of herself and all others who are or may be defendants in a summary action for recovery of premises brought pursuant to *N.J.S.A.* 2A:18–52, *et seq.* and whose right of appeal from an adverse decision is proscribed by virtue of the provisions of *N.J.S.A.* 2A:18–59." Plaintiff further alleges that since N.J.S.A. 2A:18–59 [1] limits her right to appeal from any judgment of possession entered against her, she is unable to fully defend the action and, consequently, is in danger of losing her home. This is in direct contrast to all other New Jersey actions where a right of appeal from a final judgment of the state's trial courts is afforded all unsuccessful litigants.

Plaintiff further asserts that "[b]ecause of the involvement of the state in the eviction proceedings and the fact that the lease agreement between the parties is entered into pursuant to regulation by the New Jersey Housing Finance Agency, defendant's actions also constitute state action." Plaintiff contends that her interest in her home is a fundamental property interest. Next, she argues that New Jersey has no compelling interest in limiting said right of appeal nor is there a rational relationship between this statute and any legitimate state interest. Accordingly, plaintiff alleges that, insofar as N.J.S.A. 2A:18–59 limits a right of appeal to plaintiff, it deprives her and members of her class of their rights secured by the Equal Protection Clause of the fourteenth amendment to the United States Constitution. In her prayer for relief, plaintiff seeks the certification of a class, a declaration that the provisions of N.J.S.A. 2A:18–59 are violative of the Equal Protection Clause, a preliminary and permanent injunction preventing the defendant from prosecuting any action for possession against the plaintiff and an award of compensatory damages. In her

---

1. N.J.S.A. 2A:18–59, in its entirety, provides:
   Proceedings had by virtue of this article [summary actions for recovery of premises] shall not be appealable except on the ground of lack of jurisdiction. The landlord, however, shall remain liable in a civil action for unlawful proceedings under this article.

amended complaint, plaintiff seeks an award of counsel fees pursuant to 42 U.S.C. § 1988.

On July 7, 1980, the court denied plaintiff's request for a temporary restraining order, but conditioned such denial on the representation of defendant's counsel that if defendant were to obtain a judgment for possession, it would not execute thereon. The court also notified the New Jersey Attorney General's office of the pending action, since a state statute was being called into question. The State Attorney General filed a motion to intervene, but has not pursued his motion. The court, upon its own inquiry, has been informed that the Attorney General believes that the statute is being adequately protected. Accordingly, that office has not filed any brief or affidavit in opposition to plaintiff's motion. The Attorney General has, of course, reserved his right to intervene at a later date if, in his opinion, it becomes necessary.

After the court denied plaintiff's application for a temporary restraining order, defendant answered. Defendant denies the material allegations in the complaint and asserts as a defense that the court lacks jurisdiction over the matter because no case or controversy exists. Defendant also argues that plaintiff is not an appropriate representative of the class. Finally, defendant contends that the court should abstain from rendering a decision in this case on principles of federalism.

On July 9, 1980, defendant's attorney informed the court, by letter, that "the tenancy matter has been settled by dismissal of our action for dispossess and by agreement of the tenant to move into our other building. Parkview Towers consists of two high rise buildings. Mrs. Pernas will still reside at Parkview, but will be relocated to the other building. This was agreeable to her and apparently satisfactory to management and her neighbors." After receiving this letter, the court was informed in a letter by plaintiff's counsel that

Ms. Pernas desires to continue her action in spite of these developments. Since the dismissal was without prejudice, and since at any rate, there is no res–judicata [*sic*] effect to a tenancy judgment, plaintiff may be subject to subsequent actions under the same statute. We believe this gives her standing to contest the validity of the statute, perhaps as representative of a class. . . . Furthermore, she may be entitled to monetary damages, albeit nominal, under 42 *U.S.C.* § 1983 should the Court determine that defendant proceeded under a state statute which was unconstitutional.

For these reasons, plaintiff will pursue her claim in spite of the dismissal of the underlying tenancy matter.

In her brief, plaintiff argues that the statute is unconstitutional because its limit on appeal review of dispossess actions is a violation of the Equal Protection Clause. As a second argument, plaintiff contends that this court has jurisdiction over this matter by virtue of the jurisdictional counterpart to 42 U.S.C. § 1983, that is 28 U.S.C. § 1343. As a third point for the court to consider, the plaintiff asserts that the court should not abstain from deciding this matter because however the statute is construed it still limits the right of appeal in a manner which is unconstitutional. The fourth point of plaintiff's argument deals with the question of the class certification. Plaintiff indicates that the joinder of all plaintiffs would be impracticable, that the claims are the same and that the plaintiff's attorney is competent to represent the class. Finally, the plaintiff requests that the court grant her a preliminary injunction because her eviction would cause irreparable harm.[2]

In contrast to these assertions, defendant contends that there exists at this point no case or controversy justiciable in this court. The defendant notes that plaintiff no longer faces dispossession under the Act. In

---

2. Plaintiff's sole source of income is Supplemental Security Income. She pays an apartment rental of $31 per month. The remainder of the $360 rent is made up by a subsidy paid directly to the defendant–landlord by the United States Department of Housing and Urban Development under the so-called "Section 8 program".

fact, defendant asserts that plaintiff's rights were never violated because her case never became a candidate for appellate review.

Furthermore, defendant contends that plaintiff's allegation of a class action does not save this case from being moot. Defendant argues that plaintiff is neither an adequate nor typical representative for the class. One against whom the trial action was discontinued prior to trial or judgment or who may have been successful at trial cannot typically represent a class of persons who should be composed of persons who lost at trial and then were denied appellate review.

Defendant also asserts that this court, sitting as a federal court, should abstain from deciding the constitutional issue involved in the construction of this state statute. It argues that there are underlying issues of statutory construction involved and resolution by the state courts would obviate the necessity to reach the constitutional issue in this case. A recent New Jersey Supreme Court case has broadly construed the term "jurisdiction" in N.J.S.A. 2A:18–59 so as to provide a much more flexible appellate review process. *See Marini v. Ireland*, 56 N.J. 130, 265 A.2d 526 (1970). Furthermore, N.J.S.A. 2A:18–60 [3] permits the transfer to the state Superior Court of those actions of "sufficient importance." In the state Superior Court the tenancy action would be appealable like any other civil action.

Finally, defendant defends the substantive merits of the statute by arguing that it does not violate the Equal Protection Clause. It contends that the distinction made by the state legislature is rationally related to the purpose of the Act. Also, defendant notes that the state legislature has provided the wrongfully dispossessed tenant with the right to sue the landlord for damages arising from the wrongful dispossess.

Before this court addresses the issue of the constitutionality of a state statute, it must first determine whether there exists a viable case or controversy, which case or controversy is a jurisdictional prerequisite under Article III. For the reasons to be explained shortly, the court holds that the present claims of the individual plaintiff are moot and must be dismissed. Furthermore, the court holds that this action is not proper for class certification, which certification *might* have preserved the action despite the mootness of the named plaintiff's claim.

■ With respect to the named plaintiff's claim for injunctive relief, it is evident that this claim is mooted by the dismissal of the underlying summary dispossess action and the tenant's relocation at another apartment in the defendant's complex.

With respect to plaintiff's claim for compensatory damages, defendant cites *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 *rehearing denied*, 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975), for the proposition that compensatory damages are not proper without a showing of bad faith. However, a review of that case reveals that it dealt with the dismissal of a student from high school and the Supreme Court's consideration of a teacher's immunity under 42 U.S.C. § 1983. When it rendered its decision, the Court stated:

> in the *specific context of school discipline*, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. . . . A compensation award will be

---

**3.** N.J.S.A. 2A:18–60, in pertinent part, provides:

> At any time before an action for the removal of a tenant comes on for trial, either the landlord or person in possession may apply

to the superior court, which may, if it deems it of sufficient importance, order the cause transferred from the county district court to the superior court.

appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.

420 U.S. at 322, 95 S.Ct. at 1001 (emphasis added). It is evident that this case does not entirely support the proposition that defendant cites it for.

■ In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court considered the issue of "whether, in an action under § 1983 for the deprivation of procedural due process, a plaintiff must prove that he actually was injured by the deprivation before he may recover substantial 'nonpunitive' damages." 435 U.S. at 253, 98 S.Ct. at 1046. The case arose in the context of a school dismissal action, but the Court did examine generally the issue of damages arising from an alleged violation of § 1983. The tenor of the case was that to recover damages, that is compensation, for a violation of § 1983 the plaintiff has to prove some type of injury. The Court opted for the application of standard tort principles of damages in § 1983 actions. The Court explained: "[r]ights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." 435 U.S. at 254, 98 S.Ct. at 1046. The Court, recognizing that the doctrine of damages as " 'compensation for the injury caused to plaintiff by defendant's breach of duty' " is applicable to actions under § 1983, stated that damages are available for actions " 'found ... to have been violative of ... constitutional rights *and to have caused compensable injury* ....' " 435 U.S. at 255, 98 S.Ct. at 1047 (emphasis in original). Damage awards under § 1983 should be determined by ordinary compensation principles. A person should be compensated fairly for the injuries caused by the violation of his legal rights.

The test the Court fashioned was that the rules of tort damages should be adapted as closely as possible in determining the damages available under § 1983. The Court wrote:

In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common–law rules of damages themselves were defined by the interests protected in the various branches of tort law.

435 U.S. at 258–59, 98 S.Ct. at 1049–50. Accordingly, the Supreme Court rejected the plaintiff's argument that damages were to be presumed. However, in *Carey*, the Court did determine that the plaintiff's procedural due process rights were infringed by the school board, although the question remained whether the student's dismissal was improper. Thus, for the violation of this "absolute right", that is, the right to procedural due process, the Court held that the plaintiff was entitled to nominal damages not to exceed the sum of one dollar.

■ Based upon the principles articulated in *Carey*, this court concludes that plaintiff is not entitled to any compensatory damages from defendant. Plaintiff has failed to show that she has suffered any injury which would merit the award of damages. Nor can plaintiff at this point make any showing of damages. Plaintiff is no longer the subject of a dispossess action. She was, in fact, never evicted. She now *has a new apartment in defendant's complex.*

Yet, *Carey* indicates that plaintiff may have a claim for nominal damages based upon defendant's alleged violation of her "absolute right" to equal protection under the laws. Whether plaintiff's "absolute right" was violated is the next subject for determination. This determination is also linked to plaintiff's claim for a declaration that the statute is unconstitutional.

■ With respect to plaintiff's claim for declaratory relief and for nominal damages, the court holds that such claims are moot.

As mentioned above, plaintiff is no longer the subject of a dispossess action. She has voluntarily removed herself from the subject premises and has been relocated, with her consent, to another apartment in defendant's complex. Plaintiff is, in effect, asking the court to determine in advance of an actual controversy the validity of her defense to another possible dispossess action.

*Pena v. Barzola*, 614 F.2d 771 (3d Cir. 1980), is support for this court's determination that the present matter is mooted by the tenant's voluntary removal from the premises.[4] A similar complaint to the one filed in this action was filed with another judge sitting in this court. That judge dismissed the complaint on numerous grounds, including abstention, mootness and comity.

The record in *Pena* reveals that the district court ruled, *inter alia*, that "as far as [the tenant] is concerned the issues before me are moot. She sues him—that is, the named defendant—under 1983 . . . it would be moot by virtue of her having left." Transcript at 8, 1.18 and 9, 1.3. The Third Circuit Order reads: "Pena appeals from the dismissal of her class action complaint challenging the constitutionality of *N.J.S.A.* 2A:18–59. The case having become moot, it is ordered and adjudged that the judgment of the district court be and is hereby vacated."

The Supreme Court's holding in *Sanks v. Georgia*, 401 U.S. 144, 91 S.Ct. 593, 27 L.Ed.2d 741 (1971), is also instructive. In that case, the tenants sought review of a Georgia statute which required tenants subject to dispossession to post a bond for double the rent as a condition precedent for a trial on the merits. When the case was before the Supreme Court, both tenants had moved from the apartments. In addition, the state legislature had revised the statutory procedures for dispossession actions. Accordingly, the Court explained:

The crux of this controversy from its inception has been appellants' insistence that they, not their alleged landlords, had the right to lawful possession of the premises in dispute and their demands that they be permitted to remain in possession pending the outcome of the litigation. With appellants' voluntary removal from the premises this aspect of the case is clearly moot.

401 U.S. at 148, 91 S.Ct. at 596 (footnote omitted).

The Seventh Circuit opinion in *Watkins v. Chicago Housing Authority*, 406 F.2d 1234 (7th Cir. 1969), is persuasive. In that case, a group of tenants, for themselves and others similarly situated, brought an action for declaratory judgment and injunctive relief under 42 U.S.C. § 1983. They contested the constitutionality of a clause in the Housing Authority's lease which provided for eviction at any time by giving 15 days' notice. At the time the suit was commenced, all named plaintiffs had been served with eviction notices and sued by the Housing Authority in a state court. During the pendency of the federal suits, the Housing Authority abandoned enforcement of its state court judgments and reinstated the plaintiffs as tenants. The district court dismissed the complaint upon the basis of mootness.

In affirming the district court's dismissal, the Seventh Circuit wrote:

Assuming that there was such a controversy between the twenty–three named plaintiffs and the Authority at the time the suit was filed, it was based on the premise that there was pending in the State court suits brought by the Authority for possession of the premises which plaintiffs occupied. When these suits were settled and all plaintiffs were restored to their original status, we think any controversy between the parties was extinguished. Such being the situation, it seems plain to us that the named plain-

---

4. Both parties indicate to the court that the Third Circuit vacated the judgment of the district court because the voluntary removal of the tenant from the premises had rendered the matter moot. Plaintiff's Brief, at 2; Defendant's Brief, at 3.

tiffs were no longer entitled to maintain the action on their behalf.

*406 F.2d at 1235–36.*

Of like effect is the decision in *Ortiz v. Engelbrecht,* 61 F.R.D. 381 (D.N.J.1973). In that case, this court considered another attack on the New Jersey summary dispossess statute. At the hearing, the court was informed that the tenant had vacated the premises and that her whereabouts were unknown. The court noted that "[t]he fact that she has vacated the premises renders the issue moot as to tenant." 61 F.R.D. at 386.

Based upon the foregoing review of the law, the court holds that plaintiff's claims for declaratory relief and for nominal damages are moot.

With respect to plaintiff's claim for counsel fees, she writes: "[s]ince such fees [under § 1988] are awarded only to successful plaintiffs, the Court should adjudicate the merits of plaintiff's claim, to determine this claim [for fees]." This position appears to be somewhat of a boot–strap argument.

In 1976, Congress amended 42 U.S.C. § 1988 to read: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." In deciding whether to award these fees, the court must consider two factors: first, is the plaintiff a prevailing party; and, second, has the plaintiff advanced some public interest by the litigation? The plaintiff can be considered a prevailing party even though he/she does not recover a judgment. In this case, plaintiff might be considered a prevailing party because a settlement resulted in plaintiff's relocation to another subsidized apartment. However, this litigation has not advanced the public interest in any way. In fact, the court questions whether the constitutional challenge has merit at all. Careful scrutiny of all the surrounding circumstances persuades the court that it should not award counsel fees to plaintiff.

Since plaintiff's individual claims are either moot or without merit, she is not an adequate representative of the proposed class. Defendant aptly notes in its brief that

the plaintiff is not an adequate nor typical representative of the alleged injured class. The record in this case is inadequate for appropriate review because her case never reached the stage where issues of appellate review under New Jersey law became applicable.... It is anomalous that one against whom the trial action was discontinued prior to judgment or, for that matter, one who may have gone to trial and been successful, can typically represent a class of persons who should be composed of persons who lost at trial and were denied appropriate appellate review.

*Defendant's Brief, at 6–7.* However, a ruling of mootness of the proposed named plaintiff's claim does not necessarily foreclose the possibility of proceeding via a class action.

The Supreme Court in a line of cases, starting with *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), to *United States Parole Comm. v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), has indicated that the court should inquire into the propriety of certifying a class even though the named plaintiff's claims are moot. This is especially true where the particular claim evades a judicial resolution due to repeated mootness.

F.R.Civ.P. 23(a) sets forth the prerequisites of a class action. In subsection (3), it directs that "the claims or defenses of the representative parties are typical of the claims or defenses of the class, ..." and in subsection (4) the Rule further requires that "the representative parties will fairly and adequately protect the interests of the class." Loosely termed, these requirements address the issue of the adequacy of representation. One commentator has discussed this particular problem in some detail.

The plaintiff or defendant–representative must be a member of the class which he claims to represent.... Stated another way, the plaintiff must have standing to represent the class. The more

familiar concept associated with "standing" relates to the constitutional requirement of a case or controversy under Article III and the policy restraints emanating from it.... [T]he term "standing" is also commonly used to require a sufficient nexus between the individual status of the representative and that of the particular class he purports to represent. This latter standing requirement ... is often used as legal short–hand for one or more of the prerequisites set forth in Rule 23(a), particularly adequacy of representation.

 ... a recurring problem which has arisen out of the standing requirement is whether the mooting of the individual plaintiff's claim prior to the point at which the court acts to certify the class under Rule 23(c)(1), moots the class claim. 3B Moore's Federal Practice ¶ 23.04[2], at 23–120 to –128. Mindful of this procedural dilemma, the Supreme Court has attempted to mold a solution.

In *Sosna v. Iowa, supra,* the Court ruled that it could determine the constitutionality of a state residence statute although the named plaintiff had subsequently become a resident. The Court held that in a class action where the issue would otherwise evade appellate review the live controversy required by Article III is present if such a controversy exists between the named defendant and a member of the represented class, despite the mootness of the claim of the named plaintiff. 419 U.S. at 402, 95 S.Ct. at 558. The Court noted if the time frame was so narrow that mootness loomed before the district court could make its Rule 23(c)(1) determination, then perhaps the case should be certified after the named plaintiff's claim is mooted.

In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court expanded the *Sosna* principles. In *Gerstein,* the named plaintiffs' claims possibly were moot when the district court certified the class. They definitely were moot when the case reached the Supreme Court. 420 U.S. at 111 n. 11, 95 S.Ct. at 861 n. 11. However, the Court believed that "[t]his case belongs

... to that narrow class of cases in which the termination of a class representative's claims does not moot the claims of the unnamed members of the class." *Id.* In short, the claim was one "distinctly 'capable of repetition, yet evading review.'" *Id.*

The subsequent mooting of the named plaintiff's claims, however, is not entirely irrelevant. As noted in *Kremens v. Bartley,* 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 154 (1977), the Supreme Court "ha[s] never adopted a flat rule that the mere fact of certification of a class by a district court was sufficient to require us to decide the merits of the claims of unnamed class members when those of the named parties had become moot." 431 U.S. at 130, 97 S.Ct. at 1715.

Most recently, the Supreme Court, in *United States Parole Comm. v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), considered the issue "whether a trial court's denial of a motion for certification of a class may be reviewed on appeal after the named plaintiff's personal claim has become 'moot.'" 100 S.Ct. at 1205. In that case, the named plaintiff (respondent before the Supreme Court) had brought a class action challenging the validity of the United States Parole Commission's Parole Release Guidelines. However, after the denial of class certification by the district court and while appeal was pending, the named plaintiff was released from prison.

Addressing the concept of mootness, the Court noted that it had two aspects: "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 1208. The Court focused its attention on the second aspect–the "personal stake" requirement. The Court explained that

the fact that a named plaintiff's substantive claims are mooted due to an occurrence other than a judgment on the merits does not mean that all the other issues in the case are mooted. A plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a

class.... We think that in determining whether the plaintiff may continue to press the class certification claim, after the claim on the merits "expires," we must look to the nature of the "personal stake" in the class certification claim. *Id.* at 1211. Accordingly, the Court held that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claims, even though class certification has been denied. However, the Court cautioned:

> Our holding is limited to the appeal of the denial of the class certification motion. A named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified.... If, on appeal, it is determined that class certification properly was denied, the claim on the merits must be dismissed as moot.

*Id.* at 1212 (citation and footnote omitted).

> In *Sosna v. Iowa, supra,* the Court stated: There must not only be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified ..., but there must be a live controversy at the time that this Court reviews the case.... The controversy may exist, however, between *a named defendant* and *a member of the class represented by the named plaintiff,* even though the claim of the named plaintiff has become moot.

419 U.S. at 402, 95 S.Ct. at 558 (emphasis added). As noted above, the Supreme Court has expanded upon these principles greatly. However, there still remains the requirement that there exist a controversy between *a named defendant* and *a member of the class.* In this matter, there is no evidence in the record nor has the plaintiff attempted to produce any which would indicate that there presently exists a live controversy between the named defendant—Parkview Towers Management Corp.—and a member of the proposed class. The pro-

posed class is composed of all defendants in summary dispossess actions who are deprived of their right to appellate review due to the restrictive language in N.J.S.A. 2A:18–59. Plaintiff's argument that defendant prosecutes dispossession actions every week does not suffice.[5] This mere allegation is not sufficient to create a live controversy between this defendant and the class. Accordingly, the court will deny plaintiff's motion to certify the class.

Furthermore, there is no "personal stake" in the "class certification claims" as required by *Geraghty.* 100 S.Ct. at 1211. As noted above, it has not been shown that any member of the proposed class presently has a live controversy with the defendant.

---

5. At argument on these motions, counsel for defendant informed the court that this summary dispossess action is only the second or third of its type prosecuted by defendant. Counsel further represented that defendant has not prosecuted any other summary dispossess action to a judgment within the past 45 days.