## BUSH *v.* TEXAS.

No. 511.   Argued February 26, 1963.—Decided March 25, 1963.

*Charles Alan Wright* argued the cause for petitioner. With him on the briefs was *Billy J. Moore.*

*Bruce Allen* and *Allo B. Crow, Jr.,* Assistant Attorney General of Texas, argued the cause for respondent.   With them on the briefs were *Waggoner Carr,* Attorney General, and *Sam R. Wilson* and *Linward Shivers,* Assistant Attorneys General.

PER CURIAM.

This case raises questions of due process under the Fourteenth Amendment growing out of the conviction of petitioner, an indigent, for the crime of felony theft. Upon proof of two prior theft convictions, petitioner was sentenced to life imprisonment as an habitual offender. The Texas Court of Criminal Appeals affirmed.   172 Tex.

Cr. R. 54, 353 S. W. 2d 855 (1962). We granted certiorari. 371 U. S. 859.

Petitioner, who in 1924 had been adjudged insane, entered a plea of not guilty by reason of insanity. His claims of a denial of due process are based on (1) the trial court's refusal prior to trial either to send him to a state mental institution for observation and diagnosis before requiring him to stand trial or to appoint and pay for a competent psychiatrist for that purpose; and (2) the alleged denial by the trial court of adequate time for proper examination and diagnosis by a psychologist who appeared at the trial upon request of petitioner's counsel.

Three days before argument here the State commendably filed a "Supplemental Brief for the Respondent" calling to the Court's attention the following "Diagnostic Summary," relating to the petitioner's mental condition, prepared by the Psychiatric Resident of the Houston State Psychiatric Institute at Houston:

"Wynne Treatment Center

"Diagnostic Summary

"Name: BUSH, James E.      T D C No. 165754

"Location: Wynne Farm

"I, the undersigned, Doctor A. Hug, examined on this date, James E. Bush, TDC #165754, an inmate of the Wynne farm and came to the following conclusions.

"James is a 64 year old white widower. He was born and raised in a stable farm family situation, together with two brothers and four sisters. None of his immediate relatives at any time were in psychiatric care. He attended the third grade and later worked mainly as a blacksmith. He was married once and has two children. As far as we know from

his record he was since 1937 seven times in prison for various offenses with also eight escapes listed. According to the same record he was in Terrell State Hospital in 1924 for mental observation.

"On examination patient showed marked psychomotor retardation. He appears to be extremely withdrawn, autistic, isolated from reality and encapsulated in himself. He appears to have no drive or interests. In his verbal productions he is very vague. He is only poorly oriented, giving the date as somewhere in January of 1963 and showed marked difficulties in recalling his past history or attending to any tests of his present memory capacity. He seems to be of low borderline intelligence. As reason for his various crimes he gives—'I always like to help somebody.' There are definite lapses in his trend of thought so that he at times appears to be odd in his statements or difficult to understand, as he, on the other hand, sometimes has difficulties to understand the examiner.

"All of the above evidence if not otherwise stated was given by James during a forty-five minute interview.

"From James' history of a social failure and from the present evidence, mainly: marked autism and incoherent thinking, we come to the conclusion that James suffers from *simple schizophrenia.*

"It is common knowledge that people who suffer from simple schizophrenia may go through life without calling the attention of a psychiatrist, since they may be distinguished as habitual criminals, alcoholics, vagabonds, etc. They all tend to run a protracted course which practically always starts early in life. They may deteriorate, but usually they go on without much deterioration. We have no doubts about the diagnosis of James, the only question we

have is how much of the psychotic picture (memory difficulties) at the present time may be due to organic deterioration, though [*sic*], for instance, arteriosclerosis or to his autism and lack of interest. On the assumption of the above diagnosis we would have to assume that James was only partly or not at all responsible for his acts, for very many years.

"Adolf Hug, M. D.

"Psychiatric resident, Houston State Psychiatric Institute, Houston, Texas.

"Born 1926 in Zurich, Switzerland.

"Trained at University of Zurich.

"Holding Swiss State Board and Board for Psychiatry in Switzerland.

"American training: one year internship, three years psychiatric residency.

"AH: rdm"

At oral argument, when the Assistant Attorney General of Texas was asked the views of his office in the event the case should be vacated and remanded by this Court, the following colloquy took place:

The Assistant Attorney General:

". . . [I]f this case was sent back . . . to the Court of Criminal Appeals, my personal position, speaking as Assistant Attorney General of the State of Texas, would be that the man should be . . . examined in this hospital [where he is presently confined as a result of the above examination] and that evidence should be presented to the trial court."

THE CHIEF JUSTICE:

"You would grant him a new trial?"

The Assistant Attorney General:

"Yes."

We observe that, as a rule of consistent application, "this Court has declined to anticipate a question of constitutional law in advance of the necessity of deciding it." *Peters* v. *Hobby,* 349 U. S. 331, 338 (1955). See *Alma Motor Co.* v. *Timken-Detroit Axle Co.,* 329 U. S. 129, 136 (1946). At the time its decision was rendered, the Court of Criminal Appeals had available to it neither the above psychiatrist's report nor the view of the Assistant Attorney General regarding disposition of the case. Appropriate federal-state relations and proper regard for state processes require that Texas' highest criminal court be afforded the opportunity to pass upon the case with these later developments before it.

The judgment of the Texas Court of Criminal Appeals is therefore vacated, and the case is remanded for consideration in light of subsequent developments.

*Reversed and remanded.*