UNITED STATES of America ex rel.
Hyman KESSLER, Relator,

v.

Edward M. FAY, as Warden of Green
Haven Prison, Stormville, New York,
Respondent.

United States District Court
S. D. New York.

July 14, 1964.

Hyman Kessler, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, for respondent, Lillian Z. Cohen, Deputy Asst. Atty. Gen., of counsel.

WEINFELD, District Judge.

Petitioner, now serving a sentence from two and a half to ten years at Green Haven Prison, Stormville, New York, imposed pursuant to a judgment of conviction entered upon his plea of guilty to attempted robbery in the third degree, applies for a writ of habeas corpus. He challenges the judgment of conviction as void for violation of his federally protected right to due process of law under the Fourteenth Amendment. The essence of his claim is that he was insane when the offense was committed and when he pleaded guilty, and that the County Court, Kings County, denied his application, made immediately before imposition of sentence, to withdraw his plea of guilty and to stand trial upon his defense of insanity,[1] without affording him an opportunity to present proof to sustain his claim.

When petitioner, at the sentencing, made reference to his prior mental condition, his then attorney was taken completely by surprise and stated to the Court that he knew nothing of it until

---

1. See N.Y.Code Crim.Proc. §§ 336, 337, 454.

petitioner had mentioned it "just about three minutes ago." Nevertheless, the attorney made no application for adjournment to investigate the matter, and when petitioner himself sought to withdraw the guilty plea and requested a delay because "I believe I was temporarily insane at the time due to the fact that I was a perpetual user of the drug, and I want to establish proof that that was so," the application was denied and sentence imposed. No direct appeal was taken by petitioner.

In September 1962, some nine months later, petitioner moved in the County Court before the sentencing judge for a writ of coram nobis. He sought to void the judgment of conviction upon the same grounds which he had advanced on the day of sentence—that he was insane at the time of the offense and when the guilty plea was entered. His petition alleged that the cause of insanity was the use of drugs which produced "systemized delusions and extreme hallucinations, activated as a result of [his] paranoia condition of a schizophrenia personality," and charged that since this condition had been directed to the Court's attention prior to sentence, it was bound under section 481 of New York's Code of Criminal Procedure,[2] but had failed to commit him for observation and to appoint a Lunacy Commission to determine his sanity.

Petitioner set forth his prior history which, among other matters, indicated that with respect to a then pending criminal charge against him he was committed in December 1955 to Bellevue Hospital for psychiatric observation under an order of the Court of General Sessions, and that in February 1956, following a report by a Lunacy Commission, he was committed to Matteawan State Hospital for the Criminally Insane, where he re-

mained for more than two and a half years. He further swore that upon his release in September 1958 he again became depressed and resorted to the use of drugs; that while on probation, from March 1959 to March 1961, on still another criminal charge, his probation officer made reports referring to him as demented and threatened to seek his commitment to Kings County Hospital; that on June 27, 1961, less than four months before the entry of his plea of guilty, and ten months after the commission of the crime, he had been confined to Bellevue Hospital for observation as a result of bizarre conduct, but was released on July 3, 1961 upon assurances by his family that arrangements would be made for mental treatment.

The petitioner's application for the writ was denied by the County Court without a hearing. The denial was affirmed by the Appellate Division, Second Department, and by the Court of Appeals.[3] The Court of Appeals' amended remittitur states that the Court held petitioner's Federal constitutional rights had not been violated by the refusal to let him withdraw his plea of guilty even though he contended he was insane at the time of the plea and temporarily insane when the offense was committed.[4]

The petition for the writ of coram nobis presented to the initial State Court, the County Court, although it referred to his confinement to Bellevue Hospital and the Matteawan State Hospital for the Criminally Insane, did not contain documentary proof or any corroborating affidavit by any psychiatrist who had examined or treated petitioner during the periods of his confinement. However, soon after the denial of the writ, petitioner's then attorney received a letter dated November 5, 1962 from Bellevue Hospital, which enclosed a psychiatric report

2.  N.Y.Code Crim.Proc. § 481:
    "WHAT CAUSE MAY BE SHOWN AGAINST THE JUDGMENT
    "He may show for cause, against the judgment.
    "1. That he is insane; and if, in the opinion of the court, there be reasonable ground for believing him to be insane,

the question of his insanity must be tried as provided by this Code. * * *"

3.  People v. Kessler, 13 N.Y.2d 1129, 247 N.Y.S.2d 128, 196 N.E.2d 560 (1964).

4.  14 N.Y.2d 547, 248 N.Y.S.2d 645, 198 N.E.2d 34 (1964).

dated January 11, 1956. The 1956 report noted that two years before, in 1954, the Kings County Hospital, where petitioner had been examined, had diagnosed his case as one of "inadequate personality, drug addiction, heroin and marijuana," and that "when the subject of drugs was approached, [petitioner in 1956] stated, 'I take any kind of drugs, heroin, marijuana, morphine, hasheesh, any kind.'" The 1956 report stated that with respect to a pending indictment against petitioner, he was "in such a state of insanity as to be incapable of understanding the charge indictment, proceedings, or of making his defense," and concluded that he was "suffering from a Psychosis engrafted upon a Sociopathic Personality Disorder and is a suitable case for commitment to a mental institution." There can be little doubt that this report was the basis upon which the order for petitioner's commitment to Matteawan was made in February 1956.

The letter of November 5, 1962 also noted petitioner's readmission via ambulance to Bellevue Hospital on June 27, 1961 (ten months after the commission of the offense and four months before he pled guilty), "because of hostile, negativistic behavior," and further that a psychiatric examination revealed the patient was an amphetamine addict and was not found to be overtly psychotic at the time of examination. The diagnosis was "Amphetamine Addiction with Acute Brain Syndrome."

This documentary proof was sufficient to indicate that there was more to petitioner's claim of insanity than his mere say-so and that he had an adequate basis upon which to resist the indictment charge and to challenge the entry of the guilty plea. The additional documents revealed, what the coram nobis application did not, that his extensive use of narcotics had in an earlier period resulted in a diagnosis that he was psychotic, and they shored up his contention that

continued indulgence in narcotics following his discharge had again impaired his sanity. To be sure, the fact that he was once a mental incompetent and an incessant user of narcotics thereafter does not, in and of itself, establish that he was insane at vital periods, but is certainly probative on the basic issue and is sufficient to repel any suggestion that his claim was made of whole cloth.[5]

The report and letter were not before the County Court when the application for withdrawal of the plea was made on the sentencing date, nor were the psychiatric details contained therein set forth in the petition for the writ of coram nobis; neither were they included in the record to the Appellate Division on the appeal from the County Court's denial of the writ. Nonetheless, they were annexed as exhibits to petitioner's brief in the Appellate Division and, on the subsequent appeal, included in the Court of Appeals' appendix. They are relied upon by the petitioner in support of his application for the issuance by this Court of a writ of habeas corpus.

It is evident that the factual picture presented by petitioner in support of his instant application is substantially different from that which was considered and passed upon by the initial State Court, the County Court. The State here contends that the facts now relied upon to sustain a Federal habeas corpus writ for infringement of petitioner's constitutional rights were never properly presented and considered by the State Courts; accordingly, it urges petitioner's application should be denied because he has failed to exhaust available State remedies as required by section 2254 of Title 28. Specifically, the objection centers about the 1956 Bellevue psychiatric report and the letter from the hospital dated November 5, 1962 which, as already noted, first made their appearance in counsel's brief in the Appellate Division.

5. See People v. Boundy, 10 N.Y.2d 518, 521, 225 N.Y.S.2d 207, 209, 180 N.E.2d 565 (1962). See generally Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); Linder v. United States, 268 U.S. 5, 18, 45 S.Ct. 446, 69 L.Ed. 819 (1925).

The State's brief in New York's highest Court stressed that these documents had not been before the County Judge on the motion for coram nobis and voiced strong opposition to their consideration in passing upon petitioner's constitutional claim.[6] It urges here that despite the amendment of the Court of Appeals' remittitur, it is not clear whether or not that Court considered the belatedly submitted report and the letter in reaching its conclusion. The amended remittitur makes no reference thereto, and the affirmance without opinion gives no clue as to whether the Court heeded the State's objection to a consideration of matters not part of the record before the County Court.

■■ Since it does not affirmatively appear that the State ever considered and passed upon the petitioner's claim of deprivation of his constitutional right to due process upon the facts here presented, this Court is of the view that the principle of exhaustion—based upon comity between the Federal and State Governments—requires that the State be afforded the opportunity to consider his claim upon the entire record, plus such other evidence as may be offered in an appropriate proceeding there.[7] Where a petitioner's plea attacking the validity of a judgment of conviction is rejected by a State Court upon a record which failed to present all pertinent information bearing on his claim, and subsequently he presents a materially different and stronger evidential case to the Federal Court, the requirement of exhaustion is not met where a State forum is still available to consider and pass on the additional facts first presented to the Federal Court.[8] A remedy is available.[9] The State now, somewhat inconsistently with its position before the New York State Court of Appeals,[10] acknowledges that petitioner is not foreclosed from again applying for coram nobis.[11]

Accordingly, the petition for a writ of habeas corpus is dismissed for failure to exhaust an available State remedy.

---

6. Indeed the Court was urged as a matter of fairness to the County Judge not to direct a hearing despite the alleged cogent nature of the psychiatric report, since it had not been presented to him on the original motion.

"It is, we submit, in all fairness due to the County Judge to point out that this report was not before him on the original motion. The merits of his decision are therefore not to be judged by a letter, and by the submission—and we believe a belated submission—of the report. Nor is the omission cured by its inclusion in appellant's brief in the Appellate Division. That Court was required by propriety of procedure, and—equally important —in fairness to the County Judge, to decide the issue before it upon the same papers and the same proof which were the basis of his decision. We submit that both he and the Appellate Division are entitled to similar consideration by this Court. * * * Also, we urge that the Appellate Division and the original Court below should be free of a record of reversal by this Court." (Respondent's brief in the Court of Appeals, pp. 8, 9).

7. See Bush v. Texas, 372 U.S. 586, 590, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); United States ex rel. Pollock v. Denno, 183 F. Supp. 514, 517-518 (S.D.N.Y.1960).

8. United States ex rel. Kulikauskas v. Murphy, 293 F.2d 563, 566 (2d Cir. 1961); United States ex rel. Lilyroth v. Ragen, 222 F.2d 654, 656 (7th Cir. 1955), cert. denied, 350 U.S. 939, 76 S.Ct. 312, 100 L. Ed. 820 (1956); Ex parte Farrell, 189 F.2d 540, 545-546 (1st Cir.), cert. denied, Farrell v. O'Brien, 342 U.S. 839, 72 S.Ct. 64, 96 L.Ed. 634 (1951); Ex parte Roberts, 61 F.Supp. 864, 868 (W.D.Va.1945).

9. See People v. Boundy, 10 N.Y.2d 518, 522, 225 N.Y.S.2d 207, 210, 180 N.E.2d 565 (1962); Bojinoff v. People, 299 N.Y. 145, 85 N.E.2d 909 (1943).

10. Respondent's brief in the Court of Appeals, p. 9.

11. Respondent's affidavit in opposition to the petition for a writ of habeas corpus, p. 3.