570 F.2d 957
 187 U.S.App.D.C. 48
 In re Jeffrey L. Knable et al., Petitioners.
Jeffrey L. KNABLE et al., Appellants,
v.
Jerry V. WILSON, Chief, Metropolitan Police Department, et al.
 Nos. 75-1655, 75-1656.
 United States Court of Appeals,
District of Columbia Circuit.
Order Denying Petition for Writ of Mandamus and Granting
Motion to Dismiss
 Filed Sept. 4, 1975.
March 9, 1977.
 
 James H. Heller and John H. Quinn, Jr., Washington, D.C., were on the brief for petitioner in No. 75-1655 and appellants in No. 75-1656.
 C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Richard W. Barton and Leo N. Gorman, Asst. Corp. Counsels, Washington, D.C., were on the brief for appellees in No. 75-1656.
 Robert E. Kopp and John K. Villa, Washington, D.C., were on the brief for appellees Richard G. Kleindienst and John N. Mitchell in No. 75-1656.
 Before LEVENTHAL and ROBINSON, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 Petitioners-appellants brought an action in the District Court for the District of Columbia for damages attributed to allegedly unlawful acts by respondents-appellees, the District of Columbia and federal and local officials,[1] in the course of the 1971 May Day demonstrations in Washington, D.C.[2] A judge of that court denied a motion for certification of the case as a class action[3] and, a day later, dismissed the complaint against the District of Columbia on the ground of failure to give timely statutory notice of the injuries sued for.[4]
 
 
 2
 The litigation then came to this court on a petition for a writ of mandamus[5] directing the District Judge to vacate the order of dismissal, and on an appeal[6] seeking reversal of the order refusing class-certification. We have heretofore denied the petition and dismissed the appeal,[7] and in this opinion we elucidate the bases of those dispositions.[8]
 
 I. THE PETITION FOR MANDAMUS
 
 3
 " The peremptory writ of mandamus," the Supreme Court cautions, "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' "[9] And "(w)here the right of the petitioner is not clear, and the duty of the officer, performance of which is to be commanded, is not plainly defined and peremptory," the Court instructs, "mandamus is not an appropriate remedy."[10] It is well settled that while particular kinds of judicial obligations may be enforced by mandamus,[11] the remedy cannot be invoked as a substitute for appeal.[12] Petitioners' resort to mandamus in an endeavor to force reinstatement of the District of Columbia as a party defendant to their suit does not surmount these prohibitions.
 
 
 4
 By statute, no action can be maintained against the District for unliquidated damages sustained to person or property unless within six months thereafter a written notice descriptive of the injurious event is given to the District.[13] Petitioners, conceding lack of personal notices of their alleged injuries, urge that the District was adequately informed thereof by the complaint in another lawsuit against the District officials instituted on behalf of a class which includes the present petitioners.[14] That suit, however, on unindividualized allegations of the precipitating events, sought declaratory and injunctive relief against infliction of future injuries and continued prosecution of criminal proceedings. By our appraisal, petitioners' concept of constructive specification of the statutorily-required details is not so compelling as to necessitate unhesitating acceptance.[15] We need not consider whether in the long run petitioners can prevail on their thesis;[16] it suffices for purposes of mandamus that the District Judge had no "plainly defined and peremptory" duty to permit continuance of petitioners' action against the District.[17] Nor should the argument that the notice statute cannot constitutionally be applied here[18] be considered unless and until in due course of judicial review it is determined that the statute was operative in the situation presented.[19]
 
 
 5
 Moreover, to award a writ of mandamus in these circumstances is to usurp the function of an appeal. As the Supreme Court has observed, "(a)ll our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court."[20] Mandamus "does not 'run the gauntlet of reversible errors' ";[21] it "may not be used to thwart the congressional policy against piecemeal appeals."[22] "Only where an appeal can promise no more than 'a clearly inadequate remedy' may the remedy of mandamus be resorted to."[23]
 
 
 6
 We perceive nothing suggesting the incapability of an appropriate appeal to rectify the dismissal order should it be found erroneous. Indeed, petitioners might have garnered the alternative of an early appeal had they vied for it instead of mandamus. To be sure, an order dismissing one of several parties cannot normally be appealed immediately because it does not dispose of the litigation.[24] But Federal Civil Rule 54(b) authorizes district courts in multiparty actions to "direct the entry of a final judgment as to one or more but fewer than all of the . . . parties . . . upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment . . .";[25] and when that is done an appeal may be taken at once.[26]
 
 
 7
 The record discloses no effort by petitioners to pursue that course,[27] and we are not at liberty to remediate the omission by awarding a writ of mandamus.[28] We realize that, as the matter is thus left, review of the dismissal order may await the conclusion of proceedings in the District Court against remaining parties. That, however, is precisely what Rule 54(b) afforded petitioners an unused opportunity to avoid.[29] At any rate, the resulting "inconvenience is one which we must take it Congress contemplated in providing that only final judgments should be reviewable."[30]
 
 II. THE APPEAL
 
 8
 The appeal from the order denying class-action certification confronts at the outset this court's recent decision in Williams v. Mumford.[31] There it was held that such an order generally falls outside the purview of the statute[32] conferring appealability on final orders:
 
 
 9
 It does not dispose of litigation. It is purely procedural in nature, in that it determines merely the parties to the action without expressing any judgment as to the merits of the case. Moreover, the correctness of the District Court's determination does not evade review since it, along with other procedural decisions, is brought up on appeal after final disposition on the merits.[33]
 
 
 10
 It was further held that orders of that type are not appealable either as final collateral determinations[34] or as interlocutory rulings commanding immediate review.[35]
 
 
 11
 Williams recognized, however, "that in some types of cases the refusal to certify a classification, as a practical matter, does dispose of the action."[36] That would occur in instances where "the plaintiff has such a small monetary or other interest to be vindicated in the action that it would not be worth the plaintiff's time to continue the action."[37] In such circumstances, withholding of class-action certification is obviously likely, as the difficulty is commonly expressed, to sound the "death knell" of the litigation,[38] but that clearly is not the situation here. Each of the 41 named plaintiffs[39] seeks damages exceeding $50,000, more than $2 million in the aggregate. Even if another's appraisal of damages runs much lower for example, $2,000 on the average or $82,000 in toto there remains a sufficient prospect of recovery to insure the viability of the litigation.[40]
 
 
 12
 Nonetheless, two variants of the "death knell" theory are advanced in an endeavor to impart present appealability to the noncertification order. It is first contended that the order effectively vitiates the damage claims of nonlitigating members of the class, who otherwise, it is said, are now time-barred from instituting their own lawsuits.[41] This position rests on the supposition that a one-year statute of limitations in the District of Columbia governs assertion of causes of action for constitutional violations of the character complained of here.[42] We do not intimate any view on the validity of that premise[43] for in any event it leaves us unpersuaded.
 
 
 13
 To begin with, we are unable to detect any threat of extinction to the named plaintiffs' individual damage claims attributable to a possible time barrier for those who may have slept on their rights. Beyond that, the real crux of any problem associated with the statute of limitations is not the nonappealability of the noncertification order but the delay in getting into court until one day shy of the expiration of the one-year limitation period.[44] Even assuming, without deciding, that the class-action feature of the complaint tolled the period until the District Judge ruled on the matter of certification,[45] the one day of the period remaining thereafter had already elapsed when the appeal reached this court. The consequences thereof cannot be rectified by accelerating review of the noncertification order, but only by a reversal enabling unjoined claimants to come in as members of the class.[46] Since that could occur, if proper, later as well as now, deferment to an appeal following conclusion of the District Court proceedings hardly implicates the death knell doctrine.
 
 
 14
 It is further argued, in support of immediate appealability of the noncertification order, that if the named plaintiffs prevail individually and satisfactorily on their demands for damages, there will be no incentive to appeal from the denial of class-action status, and thus the unnamed claimants will be left remediless. Should personal success on the merits suddenly eradicate the concern which the named plaintiffs so strenuously profess for their unnamed counterparts, we are satisfied that the fate predicted for the latter is not inexorable.[47] The jurisprudence of this circuit offers generously the possibility that, on the contingency postulated, unnamed claimants would be allowed to intervene for the purpose of taking the appeal.[48] Certainly we cannot automatically assume that would-be litigants able to mount a meritorious attack on the class-action noncertification ruling will inevitably be refused an opportunity to appeal from the order that shut them out. No more in this regard than in others are we persuaded to an application of the death knell doctrine.
 
 
 
 [1]
 The named defendants are former Attorneys General John N. Mitchell and Richard G. Kleindienst, former Chief of Police Jerry V. Wilson, former Director of Corrections Kenneth L. Hardy, and unknown members of the Department of Justice and the District of Columbia Metropolitan Police Department
 
 
 [2]
 See Sullivan v. Murphy, 156 U.S.App.D.C. 28, 478 F.2d 938, cert. denied, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973), on remand, 380 F.Supp. 867 (D.D.C.1974). The named plaintiffs, numbering 41, purport to represent a class of about 3,000. Their complaint charges that members of the suing class were unlawfully arrested, abused and detained by police in violation of rights secured by various provisions of the Constitution of the United States
 
 
 [3]
 The denial rested on the grounds that the
 motion to certify was not timely filed, that on the merits this action does not lend itself to such class action certification, that such certification would at this late date further delay the action and necessitate massive discovery, and that the particularized facts involved in each plaintiffs' (sic ) arrest and detention preclude class action treatment. . . .
 Knable v. Wilson, Civ.No. 874-72 (D.D.C. June 19, 1975).
 
 
 [4]
 D.C. Code § 12-309 (1973) provides:
 An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Commissioner of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.
 The office of the Commissioner of the District of Columbia was supplanted in January, 1975, by the office of Mayor of the District of Columbia, as provided by D.C. Code §§ 1-131, 1-161(a) (Supp. III 1976).
 
 
 [5]
 Pursuant to 28 U.S.C. § 1651(a) (1970)
 
 
 [6]
 Jurisdiction of the appeal was predicated upon 28 U.S.C. § 1291 (1970)
 
 
 [7]
 Our order effecting these dispositions, noting that a written decision would follow, was passed as soon as deliberations could be completed because petitioners-appellants, in a motion to expedite consideration on the merits, informed us that trial of the action was imminent. Subsequently, proceedings were stayed for months pending decision in Ream v. Wilson, No. 76-1693 (D.C.Cir.), and trial has not yet occurred
 
 
 [8]
 Part I will consider the petition for mandamus addressing the order dismissing the District of Columbia as a party defendant. Part II will examine the appealability of the order denying class-action certification
 
 
 [9]
 Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305, 310 (1967), quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185, 1190 (1943). See also Schlagenhauf v. Holder, 379 U.S. 104, 109-110, 85 S.Ct. 234, 237-238, 13 L.Ed.2d 152, 158-159 (1964); Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106, 111 (1953)
 
 
 [10]
 United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543, 57 S.Ct. 855, 857, 81 L.Ed. 1272, 1277 (1937), citing United States ex rel. Chicago G. W. R.R. v. ICC, 294 U.S. 50, 61, 55 S.Ct. 326, 330, 79 L.Ed. 752, 760 (1935); ICC v. New York, N.H. & H. R.R., 287 U.S. 178, 203, 53 S.Ct. 106, 113, 77 L.Ed. 248, 259 (1932); United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 419-420, 51 S.Ct. 502, 504, 75 L.Ed. 1148, 1152 (1931); Wilbur v. United States ex rel. Kadie, 281 U.S. 206, 218-219, 50 S.Ct. 320, 324-325, 74 L.Ed. 809, 816-817 (1930); United States ex rel. Redfield v. Windom, 137 U.S. 636, 644, 11 S.Ct. 197, 200, 34 L.Ed. 811, 814-815 (1891)
 
 
 [11]
 E. g., McClellan v. Carland, 217 U.S. 268, 279-282, 30 S.Ct. 501, 503-505, 54 L.Ed. 762, 766-767 (1910); In re Winn, 213 U.S. 458, 465-468, 29 S.Ct. 515, 516-518, 53 L.Ed. 873, 875-878 (1909); In re Grossmayer, 177 U.S. 48, 49-50, 20 S.Ct. 535, 536-537, 44 L.Ed. 665, 666 (1900); Yablonski v. UMW, 147 U.S.App.D.C. 193, 195, 454 F.2d 1036, 1038 (1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972)
 
 
 [12]
 Parr v. United States, 351 U.S. 513, 520-521, 76 S.Ct. 912, 917, 100 L.Ed. 1377, 1384-1385 (1956); Bankers Life & Cas. Co. v. Holland, supra note 9, 346 U.S. at 382-383, 385, 74 S.Ct. at 147-148, 149, 98 L.Ed. at 111-112, 113; Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041, 2043 (1947); Roche v. Evaporated Milk Ass'n, supra note 9, 319 U.S. at 25, 30, 63 S.Ct. at 941, 943-944, 87 L.Ed. at 1189, 1192
 
 
 [13]
 D.C. Code § 12-309 (1973), quoted supra note 4
 
 
 [14]
 The reference is specifically to the amended complaint filed 44 days after the May Day demonstrations in Sullivan v. Murphy, supra note 2. Sullivan was a suit for declaratory and injunctive relief on behalf of all persons arrested in the course of the demonstrations. The defendants included the Chief of Police and other senior District of Columbia officials. In resolving the issues presented, we treated the arrestees as a class. 156 U.S.App.D.C. at 56-57, 478 F.2d at 966-967. A basic approach in the instant case is that the 41 named plaintiffs comprise a subclass of the group of Sullivan arrestees
 
 
 [15]
 We are not summoned at this stage of the litigation to reach a conclusion in that regard, and, of course, we intimate none. We similarly intimate no view on such questions as whether the statutory notice requirement is jurisdictional in nature, whether or how it may be waived, et cetera
 
 
 [16]
 Compare, e. g., Smith v. District of Columbia, 150 U.S.App.D.C. 126, 128-129, 463 F.2d 962, 964-965 (1972); Hirshfield v. District of Columbia, 103 U.S.App.D.C. 71, 73, 254 F.2d 774, 776 (1958); Stone v. District of Columbia, 99 U.S.App.D.C. 32, 33-34, 237 F.2d 28, 29-30, cert. denied, 352 U.S. 934, 77 S.Ct. 221, 1 L.Ed.2d 160 (1955); District of Columbia v. Green, 96 U.S.App.D.C. 20, 21-22, 223 F.2d 312, 313-314 (1955); with, e. g., Boone v. District of Columbia, 294 F.Supp. 1156, 1157 (D.D.C.1968); Miller v. Spencer, 330 A.2d 250 (D.C.App.1974); Toomey v. District of Columbia, 315 A.2d 565, 567 (D.C.App.1974); Brown v. District of Columbia, 304 A.2d 292 (D.C.App.1973)
 
 
 [17]
 See text supra at note 10
 
 
 [18]
 Compare Wilson v. District of Columbia, 338 A.2d 437 (D.C.App.1975)
 
 
 [19]
 Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 1806, 10 L.Ed.2d 1000 (1963); Bush v. Texas, 372 U.S. 586, 590, 83 S.Ct. 922, 925, 9 L.Ed.2d 958, 960 (1963); Clay v. Sun Ins. Office, Ltd., 363 U.S. 207, 211-212, 80 S.Ct. 1222, 1225-1226, 4 L.Ed.2d 1170, 1175-1176 (1960); Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138, 142 (1951)
 
 
 [20]
 Will v. United States, supra note 9, 389 U.S. at 96, 88 S.Ct. at 274, 19 L.Ed.2d at 311
 
 
 [21]
 Id. at 96, 88 S.Ct. at 274, 19 L.Ed.2d at 311, quoting Bankers Life & Cas. Co. v. Holland, supra note 9, 346 U.S. at 382, 74 S.Ct. at 147, 98 L.Ed. at 111
 
 
 [22]
 Will v. United States, supra note 9, 389 U.S. at 104, 88 S.Ct. at 278, 19 L.Ed.2d at 315, quoting Parr v. United States, supra note 12, 351 U.S. at 520-521, 76 S.Ct. at 917, 100 L.Ed. at 1385
 
 
 [23]
 Donnelly v. Parker, 158 U.S.App.D.C. 335, 340-341, 486 F.2d 402, 407-408 (1973), quoting Bankers Life & Cas. Co. v. Holland, supra note 9, 346 U.S. at 385, 74 S.Ct. at 149, 98 L.Ed. at 113
 
 
 [24]
 Norte & Co. v. Defiance Indus., Inc., 319 F.2d 336, 337 (2d Cir. 1963); Sullivan v. Delaware River Port Auth., 407 F.2d 58 (3d Cir. 1969); Balsbaugh v. City of Westland, 458 F.2d 1358 (6th Cir. 1972)
 
 
 [25]
 Fed.R.Civ.P. 54(b) provides:
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 
 
 [26]
 Turtle v. Institute for Resource Management, 154 U.S.App.D.C. 341, 342, 475 F.2d 925, 926 (1973); Redding & Co. v. Russwine Constr. Corp., 135 U.S.App.D.C. 153, 159, 417 F.2d 721, 727 (1969); Robert Stigwood Group, Ltd. v. Hurwitz, 462 F.2d 910, 913-914 (2d Cir. 1972); Levin v. Baum, 513 F.2d 92, 95-96 (7th Cir. 1975)
 
 
 [27]
 Consequently, the order is not appealable as one within 28 U.S.C. § 1291 (1970). See cases cited supra note 26. It was not an order "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, 916 (1945). See text infra at note 33. There is no basis upon which it could be deemed an appeal from an interlocutory order within 28 U.S.C. § 1292(a) (1970). See note 35 infra and accompanying text
 
 
 [28]
 See, e. g., Norte & Co. v. Defiance Indus., Inc., supra note 24, 319 F.2d at 338
 
 
 [29]
 See Advisory Committee Notes to 1946 and 1961 Amendments to Federal Rules Civil Procedure 54(b); Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299, 302 (1950); Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 432, 76 S.Ct. 895, 898, 100 L.Ed. 1297, 1304 (1956)
 
 
 [30]
 Roche v. Evaporated Milk Ass'n, supra note 9, 319 U.S. at 30, 63 S.Ct. at 943, 87 L.Ed. at 1192. See also Bankers Life & Cas. Co. v. Holland, supra note 9, 346 U.S. at 382-383, 74 S.Ct. at 147-148, 98 L.Ed. at 111-112; United States Alkali Export Ass'n v. United States, 325 U.S. 196, 202-203, 65 S.Ct. 1120, 1124-1125, 89 L.Ed. 1554, 1560-1561 (1945)
 
 
 [31]
 167 U.S.App.D.C. 125, 511 F.2d 363, cert. denied, 423 U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975)
 
 
 [32]
 28 U.S.C. § 1291 (1970)
 
 
 [33]
 Williams v. Mumford, supra note 31, 167 U.S.App.D.C. at 128, 511 F.2d at 366
 
 
 [34]
 Id. at 130-131, 511 F.2d at 368-369. "In this case, the refusal to certify a class action did not determine collateral claims completely independent of the merits of the case. The order is indistinguishable from other procedural determinations made in the course of discovery and trial. No funds were required to be expended . . . nor rights granted under independent statutes to be dispensed with . . .. Above all, the correctness of the District Court's decision is subject to effective review on appeal from final judgment." Id. at 131, 511 F.2d at 369
 
 
 [35]
 Id. at 131-133, 511 F.2d at 369-371. "It is argued that the net effect of the refusal to certify a class action is considerably to narrow the scope of any possible injunctive relief in the event plaintiffs ultimately prevail on the merits. (Cases cited) are premised on the assumption that the refusal to certify a class action, since it would eventually affect the scope of equitable relief, itself constituted a modification of or a refusal to issue an injunction. We view this as an unwarranted expansion of the statutory language. . . . Conscious as we are of our responsibility to maintain the jurisdictional balance drawn by the Congress under sections 1291 and 1292, we are particularly reticent to expand upon statutory language which was intended as a limited exception to the final judgment rule." Id. at 131, 132, 511 F.2d at 369, 370 (footnote omitted). In the case at bar, the complaint demands compensatory and exemplary damages but does not request any form of injunctive relief
 
 
 [36]
 Id. at 128, 511 F.2d at 366
 
 
 [37]
 Id
 
 
 [38]
 See discussion id. at 129, 511 F.2d at 367
 
 
 [39]
 See note 2 supra
 
 
 [40]
 Compare Williams v. Mumford, supra note 31, 167 U.S.App.D.C. at 129, 511 F.2d at 367 (suit for amount "greatly in excess of $10,000")
 
 
 [41]
 Beyond the possible bar of the statute of limitations, we cannot assess the effect of the denial of class certification upon the unnamed plaintiffs' incentive to maintain individual suits. It was not alleged that their damages would differ significantly from those claimed by the named class members
 
 
 [42]
 D.C.Code § 12-309 (1973), quoted supra note 4
 
 
 [43]
 Compare, e. g., Chevron Oil Co. v. Huson, 404 U.S. 97, 104, 92 S.Ct. 349, 356, 30 L.Ed.2d 296, 304 (1971); UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 701-704, 86 S.Ct. 1107, 1111-1112, 16 L.Ed.2d 192, 197-199 (1966), with, e. g., McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 224-226, 78 S.Ct. 1201, 1203-1205, 2 L.Ed.2d 1272, 1275-1277 (1958); Holmberg v. Armbrecht, 327 U.S. 392, 394-396, 66 S.Ct. 582, 583-584, 90 L.Ed. 743, 746-747 (1946). See generally Note, Developments in the Law: Statutes of Limitations, 63 Harv.L.Rev. 1117, 1264 (1950); Note, Federal Statutes Without Limitations Provisions, 53 Colum.L.Rev. 68 (1953)
 
 
 [44]
 The activities generating this litigation allegedly occurred on May 4, 1971. Suit was instituted in the District Court on May 3, 1972
 
 
 [45]
 See American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 552-556, 560-561, 94 S.Ct. 756, 765-768, 769-770, 38 L.Ed.2d 713, 725-728, 730-731 (1974)
 
 
 [46]
 There seems to be no question but that upon reinstatement of the class action, all claims embraced therein would, for purposes of the statute of limitations, relate back to the date on which that action was originally filed. This would be so as to all members of the class, whether they relied upon the class action in forbearing institution of their own suits, or whether they intervened in the class action or in any way announced their decision to join. American Pipe & Constr. Co. v. Utah, supra note 45, 414 U.S. at 550-551, 94 S.Ct. at 764-765, 38 L.Ed.2d at 724-725; Esplin v. Hirschi, 402 F.2d 94, 101 n.14 (10th Cir. 1968); Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 460-461 (E.D.Pa.1968). See also Frankel, Some Preliminary Observations Concerning the Civil Rule 23, 43 F.R.D. 39, 40, 42 (1967); Cohen, The New Federal Rules of Civil Procedure, 54 Geo.L.J. 1204, 1224 n.86 (1966)
 
 
 [47]
 Appellants do not suggest any difficulty in ascertaining just who the unnamed persons comprising the asserted class actually are. The class supposedly consists of those who on the afternoon of May 4, 1971, were arrested outside the Department of Justice and thereafter were detained and abused. The Metropolitan Police Department is statutorily required to maintain arrest books recording, inter alia, the date and place of an arrest, the name and address of the arrestee, and the offense with which he is charged. D.C.Code § 4-134(4) (1973). These records must be kept open to public inspection when not in actual use, id. § 4-135, and ostensibly would enable identification of unknown arrestees in the purported class by anyone minded to do so. It can hardly be suggested that there has not been time to make the effort, since about six years have elapsed since the incidents complained of, and almost five years since this litigation was commenced
 
 
 [48]
 See Smuck v. Hobson, 132 U.S.App.D.C. 372, 375-379, 408 F.2d 175, 178-182 (en banc 1969); Zuber v. Allen, 128 U.S.App.D.C. 297, 298, 387 F.2d 862, 863 (1967); Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 143-144, 144 F.2d 505, 507-508, cert. denied, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944)