ICE PROJECTS, INC. and Bernard M. Parent

v.

WORLD HOCKEY ASSOCIATION et al. and Harold E. Kohn, Esq., Garnishee.

Civ. A. Nos. 76–3260 and 76–3261.

United States District Court, E. D. Pennsylvania.

May 5, 1977.

---

Ronald N. Rutenberg, Philadelphia, Pa., for plaintiffs.

Harold E. Kohn, David H. Weinstein, Philadelphia, Pa., for defendants.

Howard E. Davidson, Davidson & Aaron, Philadelphia, Pa., for Howard J. Casper.

## OPINION AND ORDER

HIGGINBOTHAM, District Judge.

In October, 1976 Bernard M. Parent and Ice Projects, Inc., plaintiffs herein, brought a Foreign Debtors Attachment action [Pa.

R.Civ.P. 1255 *et seq.*] and a Fraudulent Debtors Attachment [Pa.R.Civ.P. 1287, *et seq.*] [1] against defendants, the World Hockey Association (hereinafter WHA) and Harold E. Kohn (hereinafter Garnishee), garnishee of an escrow fund established pursuant to a Consent Decree in the *Professional Hockey Anti-Trust Litigation*, M.D.L. # 119 (February 19, 1974).[2] After posting a bond for $170,000 the plaintiffs attached the bank certificate of deposit in the principal amount of $1,000,000 held by the garnishee under ¶ 14 of the Indemnification agreement, Appendix D to the Consent Decree.

The Garnishee filed a petition to remove the cause of action to the federal district court; this court granted the petition, finding jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and under the doctrine of ancillary jurisdiction.[3] Further, by order of this Court, entered on November 4, 1976, the attachments were quashed as to that amount of the *res* which exceeded plaintiffs' claims of $85,000.00.

Decision on the Garnishee's motions to quash service of the writs and to dissolve the attachments in toto was reserved pending the submission of additional memoranda of law and oral argument by counsel. The WHA, relying on the garnishee's petitions and briefs, subsequently filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (2), (4) and (5). These are the motions presently before this Court. After consideration of all arguments made on behalf of the parties in this litigation, I find that, for the reasons stated herein, defendants' motions to quash and dissolve the attachments and to dismiss the complaint are GRANTED.

1. October Term, 1976, Nos. 2009, 2010, Court of Common Pleas of Philadelphia County.

2. For a detailed analysis of the *In Re: Professional Hockey Antitrust Litigation* (M.D.L. No. 119), see *In Re Professional Hockey Antitrust Litigation*, 351 F.Supp. 462 (E.D.Pa.1972), in which this Court granted a Preliminary Injunction against the enforcement of a reserve clause in contracts between hockey players and established major professional hockey league.

I.

This protracted litigation arises out of an alleged breach of contract. Plaintiffs have claimed that defendants failed to pay Bernard M. Parent $60,000.00 allegedly due for services rendered for the 1972–1973 ice hockey season. A check was issued to plaintiff dated May 31, 1973 by the WHA. When the check was presented for payment on June 2, 1973 payment was refused because payment on the check was stopped.

Plaintiffs maintain that it was not until August, 1976 that it became known to them that the $60,000 was never paid to them by the WHA. It is further alleged that only in August, 1976 did plaintiffs discover that defendant Howard J. Casper, Mr. Parent's attorney and agent, was allegedly employed by the WHA and had received $25,000 from the Philadelphia Hockey Club for signing Mr. Parent [Complaint, pages 5–7]. Plaintiffs have demanded $85,000, plus costs, from defendants, jointly and severally.

II.

Civil Action No. 76–3261 was commenced by Complaint and Writ of Foreign Attachment under Pa.R.C.P. Nos. 1251–1279, 42 Pa.C.S.A. §§ 8301 *et seq.* However, the Court of Appeals for this Circuit specifically held in the recent case *Jonnet v. Dollar Savings Bank of the City of New York*, 530 F.2d 1123 (3d Cir. 1976), that the Pennsylvania foreign attachment procedures violated the Due Process Clause of the Constitution. After balancing the interests of all parties in a foreign debtor attachment action, the Court stated that:

> We deem the Pennsylvania procedures to serve only the potential plaintiff's interests and to provide insubstantial protection to the prospective defendant against wrongful attachment. [530 F.2d at 1129]

See also *In Re: Professional Hockey Litigation*, 63 F.R.D. 641 (E.D.Pa.1974), reversed and remanded, 531 F.2d 1188 (3d Cir., 1976); judgment of the Court of Appeals reversed, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

3. The cause of action was ordered removed to the federal court pursuant to my Order, filed on October 24, 1976.

The Court did not rule that foreign attachment procedures were *per se* violations of the Due Process Clause, but did voice its concern with:

. . . ex parte procedures which summarily deprive a party of an interest in property, even though temporarily, without notice, an opportunity for a prompt hearing, or other essential safeguards against wrongful seizure. 530 F.2d at 1130.

Thus, plaintiff's attachment pursuant to the constitutionally defective Writ of Foreign Attachment is invalid.

### III.

Plaintiff's attachment of the escrow fund pursuant to a Writ of Fraudulent Debtor's Attachment is challenged by the defendants on several grounds. Defendants[4] have challenged this Court's jurisdiction over the *res* at issue. Defendants also allege that under *Jonnet v. Dollar Savings Bank, supra*, the fraudulent debtors attachment procedures are unconstitutional. Finally, defendants maintain that even if the fraudulent debtors procedure pass constitutional muster, the attachment should be quashed as plaintiffs have failed to establish their entitlement to a fraudulent debtors attachment under Pennsylvania statutory and case law.

### A.

It is a well established rule that removal jurisdiction is to some extent derivative jurisdiction; where the state court lacks subject matter jurisdiction, the federal district cannot acquire such jurisdiction upon removal, even if the federal district court would have had jurisdiction had the action been originally brought in the federal forum. *Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939); *Lambert Run Coal Co. v. Baltimore and Ohio RR.*, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922); *Federal Savings & Loan Insurance Corp. v. Quinn*, 419 F.2d 1014 (7th Cir. 1969).

We must now determine whether the state court could exercise jurisdiction in this case. Both the Garnishee and the WHA argue that under the Consent Decree in the *Professional Hockey Antitrust Litigation* this Court specifically reserved jurisdiction over the subject matter and the escrow fund created pursuant to the Decree.[5] It is therefore the defendants contention that the fund was *in custodia legis*

---

**4.** Plaintiffs have challenged the standing of the Garnishee to raise any defense of the defendants against plaintiffs or in any way attack the validity of this statement beyond asserting an exemption of the disputed property from attachment. See plaintiffs Memorandum Reply to Garnishee's Motion to Quash, pp. 6, 7, citing to *Marano v. Granata*, 151 Pa.Super. 454, 30 A.2d 243 (1943), wherein the Pennsylvania Superior Court distinguished between the "burden of resisting judgment" (which is defendants') and "the garnishee's duty to raise questions pertaining to whether he has funds which belong to the defendants. *Accord, Burd v. Rosenberg*, 11 D. & C.2d 438 (1957). However, this Court does not have to decide on the defenses which either the WHA or the garnishee can raise in this litigation as defendant WHA in its Motion to Dismiss has incorporated the arguments of the Garnishee as to the invalidity of the attachments.

**5.** Appendix D, Paragraph 4 of the Consent Decree states in pertinent part that:

4. The indemnification by the WHA and the WHA members referred to in paragraph 3 hereof shall be limited to (1) costs of litigation (which shall include costs customarily taxed as such as well as the cost of all transcripts of testimony, but which shall exclude all attorneys' fees and attorneys' travel and other expenses) hereinafter incurred by the HHL or any NHL member in defending against any such claims, (2) any amount covered by settlement of any of such claims, subject to the provisions of paragraph 7 hereof, and (3) any final judgment or judgments which might result from the trial of such claims, including any award of attorneys' fees included in such judgment or judgments. In no event shall the indemnification exceed the total aggregate amount of $1,750,000. Out of the $1,750,000 to be delivered to Harold E. Kohn, Esq., counsel for the WHA and its members, as provided by paragraph 9 of the Consent Decree, Mr. Kohn shall retain the sum of $1,000,000 and hold it in escrow in a bank certificate of deposit or equivalent interest-bearing investment for the purpose of discharging, in whole or in part, the obligation of the WHA and its members under this Indemnification Agreement.

and, under Pennsylvania case law, not subject to attachment or execution. See *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 88 L.Ed. 285 (1939); *Weicht v. Automobile Banking Corp.*, 354 Pa. 433, 47 A.2d 705 (1946); 1 Moore, Federal Practice ¶ 0.90[3], at page 833 (2d ed. 1976)].

The purpose of the doctrine *in custodia legis* is to afford protection of property from subsequent attachment or execution and to eliminate the necessity of the public officer appearing and defending several actions regarding rights to possession, thereby reducing confusion and delay in the execution of the legal process.

But, as plaintiffs correctly argue, "Protection of the rule of *custodia legis* is removed when the purpose for which the property is held has been achieved." *Weicht v. Automobile Banking Corp.*, 47 A.2d 706.

Had the purpose for which the escrow fund was held been achieved when plaintiffs caused the Writ of Fraudulent Debtors Attachment to issued? As the Supreme Court of Pennsylvania recognized in the *Weicht* decision, "in each case it is for the court to decide whether there was such custody of the law as should prevent the second attachment." 47 A.2d at 706. A cursory review of the circumstances and interests in the escrow fund suggest that of October 18, 1976, the date of the attachments, the purpose for which the fund was held had not been achieved: the WHA defendants were not unconditionally entitled to the fund's proceeds at that time; and no resolution of all claims by the NHL parties (also parties to the Consent Decree) had been reached when the fund was attached (October 18, 1976) or when the Petition for Removal was filed (October 19, 1976). [See Letter, dated October 20, 1976, from Edwin P. Rome, Esq. to the Hon. A. Leon Higginbotham, Jr., Exhibit A of Garnishee's Reply Memorandum in Support of the Motion to Quash Service of Writ of Attachment]. Therefore, the escrow fund was *in custodia legis* when plaintiffs attempted attachment.

◼ In this case, however, lack of removal jurisdiction does not require dismissal of the case under Fed. Rule 12(b), however, because jurisdiction is conferred upon this Court by virtue of an express reservation of jurisdiction in the Consent Decree as well as pursuant to the doctrine of ancillary jurisdiction.

Paragraph 14 of the Consent Decree specifically reserves jurisdiction in this Court over the subject matter and the escrow fund:

14. This Court shall retain jurisdiction for the purpose of enabling the parties to apply for such further orders or directions as may be necessary or appropriate for the construction or enforcement of the provision of this Consent Decree.

Clearly, attachment of the escrow fund by plaintiffs, who were not parties to the Consent Decree, would necessitate instructions from this Court in order to insure enforcement of the Decree and protection of the rights of litigants who were signers thereof.

Moreover, the doctrine of ancillary jurisdiction permits this Court to exercise jurisdiction in the instant litigation. The Supreme Court recently stated the doctrinal foundation for the notion of ancillary jurisdiction in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976):

* * * since federal jurisdiction in the principal suit effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, regardless of jurisdiction.[6]

Ancillary jurisdiction is particularly proper here where this Court clearly had jurisdiction over the original action under 28 U.S.C. § 1331 in the case wherein the escrow fund was created; where the defendants, in signing the Consent Decree, agreed

---

**6.** See also *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Sipe v. Local Union No. 191, United Brotherhood of Carpenters & Joiners of America*, 393 F.Supp. 865 (M.D.Pa.1975); *Pendrell v. Chatham College*, 386 F.Supp. 341 (W.D.Pa.1974).

to certain procedures, and where plaintiffs' attachment could have rendered the Court approved consent decree unenforceable. Accord, *Green v. Benson,* 271 F.Supp. 90 (E.D.Pa.1967). Therefore, this Court does have jurisdiction over the subject matter in this litigation.

### B.

Defendants assert that the Third Circuit's ruling in *Jonnet v. Dollar Savings Bank, supra,* implicitly found the Commonwealth of Pennsylvania's fraudulent debtor's attachment procedures to be unconstitutional, even though the case dealt with the foreign debtors attachment statutes, because "[w]ith one principal exception the same procedural rules govern a fraudulent debtors' attachment in Pennsylvania as control the invalid foreign attachment" [Garnishee's Memorandum in Support of the Motion to Quash Service of Writ of Attachment, p. 2].[7]

Two factors constrain this Court from adopting defendants' position. The first is that, contrary to defendants' position, Justice Rosenn, writing for the Court in *Jonnet v. Dollar Savings Bank, supra,* specifically limited that case's holding to the foreign debtors attachment procedures. In footnote 14, the Justice stated:

> It has been suggested that where in personam jurisdiction over the defendant is available, foreign attachment is per se unconstitutional, . . . or at least requires prior notice and hearing . . . . That issue is not before us, . . . and we intimate no view as to it.

■ There is a second factor which mitigates against this Court's determination of the constitutionality of the Pennsylvania fraudulent debtors attachment procedure. As a rule of consistent application, courts will not make a ruling on the constitutionality of a statute unless such ruling is considered necessary; needless consideration of attacks on the constitutional validity of statutes is to be avoided. *Bush v. Texas,*

372 U.S. 586, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); *Communist Party, U.S.A. v. Catherwood,* 367 U.S. 389, 81 S.Ct. 1465, 6 L.Ed.2d 919 (1961); *Peters v. Hobby,* 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129 (1955).

Upon consideration of all arguments, I find that plaintiffs are unable to establish their entitlement to an attachment under Pennsylvania law, rendering the fraudulent debtors attachment invalid. Therefore, consideration of the constitutionality of the statutory scheme is both unnecessary and inappropriate.

### C.

■ In their complaint, plaintiffs, pursuant to Rule 1286(1) of the Pennsylvania Rules of Civil Procedure, averred that the defendants, with intent to defraud the plaintiff, had removed or were about to remove property out of Pennsylvania. While that is all plaintiffs must allege in the complaint, more must be proved if the writ is challenged; the burden is on the plaintiff to sustain his averments of fraud on the part of the defendants. *Locey v. Sterling Motor Truck Co. of Pittsburgh,* 102 Pa.Super. 148, 156 A. 730, 732 (1931).

Under the facts as presented, plaintiffs have failed to meet this burden. The fund at issue will be used by the WHA to fulfill obligations which include settlement of litigation and claims pending in the *Professional Hockey Anti-Trust Litigation.* At best, what plaintiffs have alleged and proved is that the WHA will use the remainder of the proceeds from the escrow fund to prefer some creditors over others. It is well established under Pennsylvania law that " . . . an intent to prefer a creditor is not the type of fraud which the Act of 1869 contemplated. Since the language of the Rule is exactly the same as the language used in the Act, the Rule must be similarly construed." 4 Goodrich-Amram 2d § 1286:5, p. 379.

---

7. "The only distinction between the invalid Pennsylvania foreign attachment procedure and the fraudulent debtors procedure here employed is that plaintiffs claim to have filed a bond pursuant to Pa.R.C.P. Rule 1287(b) in an amount twice their claim for $85,000.00."

It is arguable that plaintiffs cannot accurately consider themselves "creditors", as there has been no adjudication of any liability owed to plaintiffs by defendants. Thus, the instant case is easily distinguishable from cases where there has been a determination of liability. And, there is some indication that under Pennsylvania case authority, even when a defendant has been found to be liable to a plaintiff, said plaintiff may not attach the proceeds of a court approved settlement to the extent that the proceeds have been specifically allocated to others. *Wolf v. Painter*, 21 D. & C.2d 235 (1959).

Thus, as plaintiffs have failed to sustain their burden of proving intent to defraud on the part of the defendants, this Court finds that the Writ of Fraudulent Debtors Attachment be Quashed.